UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 9900**

| | |
|---|---|
| GARY CINOTTO, Derivatively on Behalf of CITIGROUP INC., | Civil Action No. |
| Plaintiff, | VERIFIED SHAREHOLDER'S DERIVATIVE COMPLAINT |
| vs. | |
| CHARLES PRINCE, C. MICHAEL ARMSTRONG, ALAIN J.P. BELDA, GEORGE DAVID, JOHN M. DUETCH, ROBERTO HERNANDEZ RAMIREZ, ANDREW LIVERIS, ANNE M. MULCAHY, RICHARD D. PARSONS, JUDITH RODIN, ROBERT E. RUBIN, ROBERT L. RYAN, FRANKLIN A. THOMAS | |
| Defendant(s). | |
| – and – | |
| CITIGROUP INC., | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

[Stamp: NOV 0 8 2007 U.S.D.C. S.D.N.Y. CASHIERS]

Plaintiff, Gary Cinotto, derivatively on behalf of Citigroup Inc. ("Citigroup" or the "Company"), upon his personal knowledge, as to the allegations pertaining to him, and belief as to all other allegations, based upon, amongst other things, the investigations made by his attorneys, alleges the following:

- 1 -

## INTRODUCTION

1. In early October 2007, Citigroup director Robert Rubin bet the New York Times $100 that Citigroup's CEO, Charles Prince, would still be the Company's CEO five years later. It took Rubin less than a month to lose that bet.

2. On November 4, 2007, Prince announced he was "retiring," ending his rocky four-year tenure as Citigroup's CEO. According to Prince:

> It is my judgment that given the size of the recent losses in our mortgage-backed securities business, the only honorable course for me to take as chief executive officer is to step down. This is what I advised the board.

3. The losses Prince was referring to are a $6 million write off that Citigroup has already taken for the 2007 fiscal third quarter, as well as an estimated $8 billion to $11 billion that Citigroup plans to take for the 2007 fiscal fourth quarter mainly on Collateralized Debt Offerings ("CDOs") secured by risky subprime mortgages. Under Prince's leadership, Citigroup became one of Wall Street's leading underwriters of these risky investments.

4. Prince did not act alone. Citigroup's directors turned a blind eye to Prince's imprudent strategy and completely abdicated their role of ensuring that Citigroup had adequately managed its risk exposure. Even worse, some of the defendants named in this lawsuit intentionally caused Citigroup to issue financial statements that concealed the dangers Citigroup faced as a result of its huge exposure to CDOs.

5. Unbelievably, despite leading Citigroup down a disastrous path that will wind up costing the Company $15 billion or more, compensation experts estimate that Prince will walk away with a severance package worth nearly $100 million.

6. As explained below, the defendants named in this lawsuit breached their fiduciary obligations to exercise a high degree of due care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. Because a majority of Citigroup's directors will not authorize a lawsuit against themselves, Plaintiff brings this action on behalf of Citigroup to, among other things, recover the damages caused by the defendants' malfeasance.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein under 28 U.S.C. § 1332, as complete diversity exists between plaintiff and each defendant and the amount in controversy exceeds the jurisdictional minimum of this Court.

8. Venue is proper in this Court because Citigroup has its principal place of business in this District; Plaintiff's claims arose in this District; and Citigroup has suffered and will continue to suffer harm in this District and is a citizen of New York.

## THE PARTIES

9. Plaintiff Gary Cinotto is, and was at the time of the transaction of which Plaintiff complains, an owner and holder of Citigroup common stock. Plaintiff is a citizen of Texas.

10. Nominal Defendant Citigroup is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 399 Park Avenue New York, NY 10043. Citigroup is a citizen of both New York and Delaware.

11. Until his "retirement," Defendant Charles Prince ("Prince") was a member of Citigroup's board of directors, the board's Chairman, and the Company's Chief Executive Officer. Upon information and belief, Prince is a citizen of New York.

12. Defendant C. Michael Armstrong has been a member of Citigroup's board of directors since 1989. Upon information and belief, Armstrong is a citizen of Connecticut and Florida.

13. Defendant Alain J.P. Belda has been a member of Citigroup's board of directors since 1997. Upon information and belief, Belda is a citizen of New York.

14. Defendant George David has been a member of Citigroup's board of directors since 2002. Upon information and belief, David is a citizen of Connecticut.

15. Defendant John M. Deutch has been a member of Citigroup's board of directors since 1996, and before that was a director from 1987 to 1993. Upon information and belief, Deutch is a citizen of Massachusetts.

16. Defendant Roberto Hernandez Ramirez has been a member of Citigroup's board of directors since 2001. Upon information and belief, Ramirez is a citizen of Mexico.

17. Defendant Andrew N. Liveris has been a member of Citigroup's board of directors since 2005. Upon information and belief, Liveris is a citizen of Michigan.

18. Defendant Anne M. Mulcahy has been a member of Citigroup's board of directors since 1997. Upon information and belief, Mulcahy is a citizen of Connecticut.

19. Defendant Richard D. Parsons has been a member of Citigroup's board of directors since 1996. Upon information and belief, Parsons is a citizen of New York.

20. Defendant Judith Rodin has been a member of Citigroup's board of directors since 2004. Upon information and belief, Rodin is a citizen of Pennsylvania.

21. Defendant Robert E. Rubin has been a member of Citigroup's board of directors since 1999. Upon information and belief, Rubin is a citizen of New York.

22. Defendant Robert L. Ryan has been a member of Citigroup's board of directors since 2007. Upon information and belief, Ryan is a citizen of Minnesota.

23. Defendant Franklin A. Thomas has been a member of Citigroup's board of directors since 1970. Upon information and belief, Thomas is a citizen of New York.

24. Defendants Armstrong, Belda, David, Deutch, Ramirez, Liveris, Mulcahy, Parsons, Rodin, Rubin, Ryan, and Thomas are sometimes collectively referred to in this Complaint as the "Director Defendants." By reason of their positions as directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Director Defendants owed the Company and its shareholders the fiduciary obligations to exercise a high degree of due care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The Director Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. As a result of these duties, the Director Defendants are obligated to use their best efforts to act in the interests of the Company and shareholders to ensure that no waste of corporate assets occurs. The Director Defendants, because of their positions of control and authority as directors and/or

officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

## FACTUAL BACKGROUND

**Background of Citigroup**

25. With $2.4 trillion in assets, Citigroup is the largest U.S. bank by assets. Citigroup, and its numerous subsidiaries, operate in retail and commercial banking, credit cards, investment banking and stock brokerage. Citigroup employs about 300,000 people in more than 100 countries around the world.

26. In October 2003, Citigroup named Defendant Prince as its CEO. Four years later, the price of Citigroup's stock is worth 17% less than what is was when Prince took the helm while stocks of other financial firms have grown robustly during that time.

27. The fact that Citigroup's stock dropped under Prince's leadership is hardly surprising. After all, Prince is a lawyer by trade and had very little management experience before being nabbed to run the Company. Moreover, according to Forbes.com, Prince's "tumultuous four years" at the helm of Citigroup was "peppered with run-ins with regulators and harsh criticism for his management style and his control over the sprawling global bank." According to Rueters, his "turbulent tenure as company chief . . . was marked by heavy turnover among senior managers, questions over the company's strategy and heavy loan and credit losses.

28. Despite Prince's "turbulent" and "tumultuous" tenure as head of the Company, Citigroup's board rewarded him handsomely. Prince was paid just under $26 million in salary, bonus, stock and other benefits in 2006 alone.

### Prince Causes Citigroup to Invest Heavily in CDOs

29. CDOs are essentially mutual funds that buy securities backed by things like mortgages, auto loans and corporate bonds. Specifically, after a loan is originated, it is often packaged up into an asset-backed security. These are then sliced into different tranches and sold to institutional investors such as hedge funds and insurers. CDOs became very popular among fixed-income investors looking for higher yields in a low-yield world. In 1995, there were hardly any. In 2006, CDOs worth more than $500 billion were issued.

30. CDOs helped fuel the housing boom of the late 1990s and most of this decade. About 40% of CDO collateral is residential-mortgage-backed securities. Almost three quarters of that is secured by risky subprime and home-equity loans.

31. When the housing bubble began to burst, rating agencies quickly began downgrading many CDOs. And while most financial firms began pulling back from the CDO market, Citigroup did not. As of October 2007, Citigroup was holding $43 billion worth of hard-to-trade CDOs.

### Citigroup is Forced to Write Down Billions of Dollars in CDOs

32. On October 15, 2007, Citigroup announced that it would have to write down more than $6.5 billion for the 2007 fiscal third quarter. Much of that write down was for CDOs that Citigroup could not value and had little expectation of ever selling. Citigroup also announced a third-quarter profit of $2.38 billion – a 57% drop from the same period the year before.

33. Then, on November 5, Citigroup announced that it would need to write down an additional $8 billion to $11 billion in CDOs for the 2007 fiscal fourth quarter. Further,

Citigroup said it was lowering its previously stated third-quarter profit by an additional $166 million to $2.21 billion. Even worse, it is highly likely that Citigroup will need to write down even more in CDOs in the near future. Indeed, Citigroup's own CFO admits more write downs are likely.

34. Sadly, a considerable portion of these write downs could have been avoided had Prince and the rest of the Company's management not been asleep at the wheel a few months earlier. According to Businessweek, "It's clear that Prince and Citi management had no appreciation for the depth of the credit market's problems. Crittenden [Citigroup's CFO] said the company could have hedged against a decline in the value of its CDOs back in February [2007]. But by the time they realized their mistake in September, it was too late to buy a hedge at a reasonable rate. Citi management never saw the problems in the subprime credit market."

**Prince Tumultuous Reign Finally Comes to an End**

35. On November 4, the day before Citigroup announced its staggering estimated fourth-quarter write downs, Prince "retired" from the Company. "It is my judgment that given the size of the recent losses in our mortgage-backed securities business, the only honorable course for me to take as chief executive officer is to step down, Prince said in a statement issued by Citigroup.

36. Of course, Citigroup could have and should have fired Prince. Instead, they allowed him to "retire" and potentially collect an exorbitant severance package. In fact, compensation experts predict that Prince will walk away with an incredibly undeserved severance package worth nearly $100 million.

## DEMAND FUTILITY

37.     Plaintiff brings this action derivatively in the right and for the benefit of Citigroup to redress damage suffered and to be suffered by Citigroup as a direct result of Defendants' breaches of fiduciary duty, corporate mismanagement, and abuse of control. This is not a collusive action to confer jurisdiction in this Court which it would not otherwise have. Plaintiff will adequately and fairly represent the interests of Citigroup and its shareholders in enforcing and prosecuting their rights.

38.     Plaintiff has not made any demand on the present board of directors of Citigroup to institute this action because such demand would be a futile and useless act.

39.     Citigroup's current board is made of up 13 directors. A majority of these those directors cannot act impartially on a demand for the following reasons:

(a)     Defendants Armstrong, David, Deutch, Liveris, Mulcahy and Rodin are on Citigroup's "Audit and Risk Management Committee." Armstrong is the committee's chairman. According to the committee's charter, one of its primary obligations is to set "policy standards and guidelines for risk assessment and risk management." Each of these defendants completely failed to fulfill this obligation by allowing Citigroup to become so entrenched in CDOs, which ultimately resulted in billions of dollars in write downs and lost profits. As such, each of these defendants cannot independently analyze or investigate the claims asserted in this action because each faces a real and substantial danger of personal liability in this action.

(b)     According to Citigroup's most recent proxy statement, Defendants Rubin and Ramirez are not "independent." As such, these defendants admittedly cannot analyze or investigate the claims asserted in this action.

(c)     Several defendants have close personal or business ties with one another. For example, between 2002 and 2004, Defendant Armstrong was the Chairman of Comcast Corporation. During this same time period, Defendant Rodin served on Comcast's board of directors. Similarly, Defendant Belda is the Chairman and CEO of Alcoa, Inc. Defendant Thomas is one of Alcoa's directors. Finally, both Defendant Armstrong and Deutch are both professors at the Massachusetts Institute of Technology. As such, these defendants are unlikely to authorize a suit against one another.

## CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duties of Care, Loyalty and Good Faith)

40.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41.     As alleged in detail herein, Prince, and each of the Director Defendants, had a duty to Citigroup and its shareholders to, amongst other things, ensure that the Company was operated in a diligent, honest and prudent manner.

42.     Plaintiff asserts this claim derivatively on behalf of Citigroup against Prince and all of the Director Defendants.

43.     Prince and the Director Defendants have breached their fiduciary duties of care, loyalty and good faith owed to Citigroup and its stockholders by allowing the Company

to assume over $43 billion in risky CDOs, $3 billion of which has already had to be written down, with even greater write downs anticipated in the near future.

44.     Further, each of the Director Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

45.     By reason of the foregoing, Citigroup has sustained and will continue to sustain serious damage and irreparable injury, for which relief is sought herein.

46.     Plaintiff and Citigroup have no adequate remedy of law.

## SECOND CLAIM FOR RELIEF

### (Corporate Waste)

47.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

48.     Plaintiff alleges this cause of action on behalf of Citigroup against Prince and the Director Defendants.

49.     Prince and each of the Director Defendants owe and owed to Citigroup the obligation to protect Citigroup's assets from loss or waste.

50.     Prince and the Director Defendants' failure to adequately evaluate and monitor Citigroup's risk in the CDO market constituted a waste of Citigroup's corporate assets and were grossly unfair to Citigroup. No person of ordinary, sound business judgment could

conclude that Prince and the Director Defendants' decision to become so overextended in the risky CDO market was a sound exercise of business judgment.

51. By reason of the foregoing, Citigroup has sustained and will continue to sustain serious damage and irreparable injury, for which relief is sought herein.

52. Plaintiff and Citigroup have no adequate remedy at law for the wasteful and wrongful conduct engaged in by the Director Defendants.

53. Plaintiff and Citigroup are therefore entitled to judgment against the Director Defendants as specified below.

### THIRD CLAIM FOR RELIEF

### (Against All Defendants for Abuse of Control)

54. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

55. Defendant Prince's and the Director Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Citigroup, for which they are legally responsible.

56. As a direct and proximate result of these defendants' abuse of control, Citigroup has sustained significant damages.

57. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

### FOURTH CLAIM FOR RELIEF

### (Against All Defendants for Gross Mismanagement)

58. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59. By their allegations alleged herein, Defendant Prince and the Director Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Citigroup in a manner consistent with the operations of a publicly held corporation.

60. As a direct and proximate result of these defendants' gross mismanagement and breaches of duty alleged herein, Citigroup has sustained significant damages in excess of $10 billion dollars.

61. As a result of the misconduct and breaches of duty alleged herein, these defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and in favor of Citigroup against all of the Defendants as follows:

A. Against all the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets;

B. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures to protect Citigroup and its shareholders from


58. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59. By their allegations alleged herein, Defendant Prince and the Director Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Citigroup in a manner consistent with the operations of a publicly held corporation.

60. As a direct and proximate result of these defendants' gross mismanagement and breaches of duty alleged herein, Citigroup has sustained significant damages in excess of $10 billion dollars.

61. As a result of the misconduct and breaches of duty alleged herein, these defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and in favor of Citigroup against all of the Defendants as follows:

A. Against all the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets;

B. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures to protect Citigroup and its shareholders from

a repeat of the damaging events described in this Complaint, including but not limited to, adopting the following remedial measures:

    1)    strengthening the board's supervision and oversight responsibilities and developing a system to ensure the board accurately manages the Company's risk potential;

    2)    prohibiting and individual from concurrently serving as the Chief Executive Officer and the Chairman of the Board;

    3)    allowing the Company's shareholders to nominate at least one candidate for election to the board; and

    4)    a policy of ensuring the accuracy of the qualifications of Citigroup's directors, executives and other employees;

    C.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts fees, costs and expenses; and

    D.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 8, 2007

LAW OFFICES OF THOMAS G. AMON

_____
THOMAS G. AMON (TGA – 1515)

500 Fifth Avenue, Suite 1650
New York, N.Y. 10110
Telephone: (212) 810-2430
Facsimile: (212) 810-2427

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.
655 W. Broadway, Suite 1400
San Diego, CA 92101
Telephone: 619/230-0063
Facsimile : 619/233-5535

*Counsel for Plaintiff*

## VERIFICATION

I, Gary Cinotto, verify:

I am the Plaintiff in the above-entitled action; I hereby verify that I was a shareholder of Citigroup at the times the misconduct complained of in the Verified Derivative Complaint for Breach of Fiduciary Duties ("Complaint") occurred. Additionally, I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and believe them to be true. Having received a copy of this Complaint, having reviewed it with my counsel, I hereby authorize its filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __6__ day of November, 2007 at __San Diego__ California.

_____
Gary Cinotto