IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY HARRIS, Derivatively On Behalf of CITIGROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> CHARLES PRINCE, et al., <br><br> Defendants, <br><br> -and- <br><br> CITIGROUP, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. 07-CV-9841 (SHS) |
| GARY CINOTTO, Derivatively On Behalf of CITIGROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> CHARLES PRINCE, et al., <br><br> Defendants, <br><br> -and- <br><br> CITIGROUP, INC., <br><br> Nominal Defendant. | Case No. 07-CV-9900 (SHS) |
| BENJAMIN NATHANSON, Derivatively On Behalf of CITIGROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> CHARLES PRINCE, et al., <br><br> Defendants, <br><br> -and- <br><br> CITIGROUP, INC., <br><br> Nominal Defendant. | Case No. 07-CV-10333 (JSR) |

[Caption continued on following page.]



| | |
|---|---|
| SAM COHEN, Derivatively On Behalf of CITIGROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> CHARLES PRINCE, et al., <br><br> Defendants, <br><br> -and- <br><br> CITIGROUP, INC., <br><br> Nominal Defendant. | ) Case No. 07-CV-10344 (SHS) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| WALTER E. RYAN, JR., Derivatively On Behalf of CITIGROUP, INC., <br><br> Plaintiff, <br> vs. <br><br> CHARLES PRINCE, et al., <br><br> Defendants, <br><br> -and- <br><br> CITIGROUP, INC., <br><br> Nominal Defendant. | ) Case No. 07-CV-11581 (UA) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPPOSITION TO COMPETING MOTIONS TO CONSOLIDATE ALL RELATED SHAREHOLDER DERIVATIVE ACTIONS AND APPOINT LEAD COUNSEL FOR PLAINTIFFS**

I. **INTRODUCTION**

Five related shareholder derivative actions on behalf of Citigroup, Inc. ("Citigroup" or the "Company") and against certain of its officers and directors are currently pending before this Court. Each of the five shareholders, through counsel, has asked this Court to approve a different leadership structure. The competing five motions or groups have several things in common. Each claims that it has a well-developed complaint. Each of the groups claims that it is comprised of the best legal team, some with "combined" experience of more than one hundred years.

In addition, most of the groups put forward a distinguishing factor. Plaintiff Harris' group claims that it should be selected because its complaint was the first on file. Plaintiff Cohen's group claims that it should be selected because it is based in New York (although not a factor reference by any known published decision). Plaintiff Ryan's group claims that it should be selected because "no other plaintiff in these actions holds a comparable amount of shares" (although not a definitive factor outside of the Private Securities Litigation Reform Act). However, as the many courts have recognized, no one factor is definitive. Rather, all factors should be given appropriate weight. After considering all of the relevant factors, and assigning the appropriate weight, Plaintiff Gary Cinotto respectfully submits that this Court should appoint his counsel, Johnson Bottini, LLP, as lead counsel and the Law Offices of Thomas G. Amon as liaison counsel. Alternatively, if the Court is inclined to appoint more than one lead counsel, or an executive committee, Cinotto respectfully requests that this Court include Johnson Bottini.

## II.    APPROPRIATE CONSIDERATIONS

All movants agree that the related derivative cases should be consolidated and that the Court should appoint a leadership structure. The movants apparently disagree on what factors should be most persuasive to the Court. A number of courts have articulated tests that include the following common sense factors in determining which of competing leadership structures should be approved:

- whether the plaintiffs are represented by capable counsel
- the quality of the pleadings;
- the economic interest of the plaintiffs;
- the vigorousness of the prosecution of the lawsuits; and
- the relative timeliness of the filing of the respective lawsuits.

While all factors should be considered, "the principle that guides the Court's decision is which counsel will best serve the interest of the plaintiffs."[1] Accordingly, this factor will be addressed first, followed by the other factors.

### A.  Johnson Bottini Will Best Serve The Interest Of The Plaintiffs

As described in more detail in the moving papers, Johnson Bottini will best serve the interests of the plaintiffs for three reasons: (1) Johnson Bottini has experience in similar matters; (2) Johnson Bottini has been recognized by many courts as having the necessary skills and experience to handle complex matters such as this one; and (3) Johnson Bottini has been retained by publicly traded corporations to pursue similar claims against directors.

With respect to the first two points, it appears that each of the movants has experience in similar matters, has been appointed lead counsel, and has corresponding firm resumes demonstrating achieved results. Although it may be a common approach, this opposition is not intended to disparage or suggest that other counsel are not fit to act as lead counsel in this matter. Indeed, Johnson Bottini has been, and currently is, co-counsel with some or all of the counsel in every one of the other four competing motions.

The third point above demonstrates why Johnson Bottini will uniquely better serve the interest of the plaintiffs and the nominal defendant Citigroup. Each of the five lawsuits has been brought derivatively on behalf of Citigroup, a publicly traded company. Each of the five lawsuits seeks damages from certain officers and directors of Citigroup. Each of the five lawsuits seeks to improve Citigroup as a company. On information and belief, Johnson Bottini is the only one of the competing counsel that has actually been retained by a publicly traded company to pursue claims against directors for their misconduct. Only Johnson Bottini offers a lead trial counsel who has prosecuted and defended claims such as those alleged these lawsuits. As a result, the appointment of

---

[1] *See Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005); *Millman ex. rel. Friedman's, Inc. v. Brinkley*, No. 1:03-CV-3831, 2004 U.S. Dist. LEXIS 20113, at *3-4 (N.D. Ga. Oct. 1, 2004); *Dollens v. Zionts*, No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966, at *4-6 (N.D. Ill. Dec. 4, 2001); *TCW Tech. Ltd. P'ship v. Intermedia Communs., Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10-11 (Del. Ch. Oct. 17, 2000).

Johnson Bottini as lead counsel will unquestionably serve the best interests of Citigroup, and its shareholders, in this derivative action.

### B. The Quality of Johnson Bottini's Pleadings Cannot Be Challenged

While one or more of the movants may claim to have better or longer complaints, appointing lead counsel on the basis of the "quality of pleadings" alone would be a misguided approach given the fact that the only real pleadings on file consist of the complaint. The number of allegations or pages in a complaint does not make for a better quality pleading. In addition, the later filed complaints have the benefit of analyzing the allegations of the earlier filed complaints and additional news that has been released (one reason why the timing of filing is given an equal weight). It cannot be disputed that Cinotto's complaint is very well researched and written.

### C. Cinotto Has A Strong Economic Interest

The last plaintiff to file one of the five related cases, Walter E. Ryan, Jr. ("Ryan"), allegedly owns 50,000 shares. If this factor where the only factor the Court considered, and if the appropriate evidence had been submitted, then admittedly the Court should grant Ryan's motion. However, the motions before the Court seek to consolidate all the cases in which all of the clients' interests will be served by the counsel who "will best serve the interest of the plaintiffs." Unlike the Private Securities Litigation Reform Act, the client with the largest economic interest is not a deciding factor in a determining which counsel should be lead counsel in a derivative action.[2]

Cinotto owns 300 shares of Citigroup, which equates to an economic interest of approximately $9,000. Relatively speaking, Cinotto has a strong economic interest in this matter.

---

[2] "In light of the critical difference between PSLRA and derivative cases -- the former is brought on behalf of the shareholders themselves, and the latter is brought on behalf of the corporation -- the PSLRA is simply not an adequate template from which to determine whom should be appointed lead counsel in a shareholder derivative case." *In re Comverse Tech., Inc. Derivative Litig.*, 2006 U.S. Dist. LEXIS 94235 (D.N.Y. 2006)

### D. Johnson Bottini Has Been Diligent In Pursuing This Matter

After being retained by Cinotto on or about November 4, 2007, Johnson Bottini researched and prepared a complaint. Cinotto reviewed and verified the complaint on November 6. Johnson Bottini caused the complaint to be filed on November 8, 2007. Johnson Bottini immediately sought to obtain efficiencies in this case by seeking a stipulation from all counsel to consolidate the cases and appoint a leadership structure. By November 14, 2007, Johnson Bottini had already reached out to counsel in the first filed case, reached an agreement for a leadership structure, and circulated a draft stipulation for consolidation and appointment of lead counsel. See Johnson Decl. at ¶ 2. Thereafter, Johnson Bottini understood that the stipulation was awaiting defendants' approval. Everything changed on January 17, when Johnson Bottini learned that two motions for consolidation and for leadership were filed. *Id.*

### E. Cinotto's Complaint Was Filed One Day After The First Filed Complaint And *48 Days Before The Fifth Filed Complaint*

Although the "first to file" is not a dispositive factor, courts still consider the relative timing of filing complaints when there are competing motions for lead counsel.[3] When the other factors are equal, the relative timing of filing is often relevant particularly given the practice of plaintiffs' lawyers who advertise the filing of an earlier filed lawsuit in an effort to solicit clients and file related lawsuits. Here, there can be no question that the first two lawsuits filed were independently researched, drafted, and filed one day apart. Later filed complaints obviously have the "benefit" of considering the analysis and research conducted by the first two filed lawsuits. This factor weighs equally in favor of the first two filed lawsuits, Harris and Cinotto.

---

[3] *See e.g., Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (the "first-filed factor typically becomes decisively important [when] a consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker...."); *Armstrong v. Doyle*, 20 Misc. 2d 1087, 1088-89 (N.Y. Sup. Ct. 1959) ("the court, under normal circumstances, should consider the wishes of the one who first brought suit...")

## III. CONCLUSION

For the reasons stated above, Plaintiff Cinotto respectfully requests that the Court consolidate the related cases, appoint Johnson Bottini as lead counsel for this matter, and appoint the Law Offices of Thomas G. Amon as liaison counsel. Alternatively, if the Court is inclined to appoint more than one lead counsel, Johnson Bottini respectfully requests that the Court include it as co-lead counsel.

Dated: February 4, 2008

_____
THOMAS G. AMON

LAW OFFICES OF THOMAS G. AMON
500 Fifth Ave., Suite 1650
New York, NY 10110
Counsel for Plaintiffs

Dated: February 3, 2008

_____
FRANK J. JOHNSON

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.
BRETT M. WEAVER
655 West Broadway Suite 1400
San Diego, CA 92101

Counsel for Plaintiff Gary Cinotto