UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |
| In re DHB INDUSTRIES, INC. CLASS ACTION LITIGATION | : | Civil Action No. CV 05-4296(JS)(ETB) |
| | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | <u>CLASS ACTION</u> |
| | : | |
| This Document Relates To: | : | |
| | : | |
| ALL ACTIONS. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |
| | | |
| In re DHB INDUSTRIES, INC. DERIVATIVE LITIGATION | : | Civil Action No. CV 05-4345(JS)(ETB) |
| | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | <u>DERIVATIVE ACTION</u> |
| | : | |
| This Document Relates To: | : | |
| | : | |
| ALL ACTIONS. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |

STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation"), dated as of November 30, 2006, is made and entered into pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure and contains the terms of a settlement (the "Settlement"), initially outlined in a Memorandum of Understanding, dated as of July 12, 2006 ("MOU"), (a) by and among the Class Defendants (as defined below in Section IV, ¶1 as are other capitalized terms herein, except as otherwise noted) and the Class Plaintiffs, on behalf of themselves and Members of the Class in connection with *In re DHB Industries, Inc. Sec. Litig.*, No. CV 05-4296(JS)(ETB) (the "Class Action"), pending in the United States District Court, Eastern District of New York (the "Court"); and (b) by and among the Derivative Defendants and the Derivative Plaintiff, derivatively and on behalf of DHB Industries, Inc. ("DHB" or the "Company"), in connection with *In re DHB Industries, Inc. Derivative Litigation*, No. CV 05-4345(JS)(ETB) (the "Derivative Action") pending in the Court (collectively, the "Actions").

This Stipulation is intended by the Class Plaintiffs, the Derivative Plaintiff and the Defendants to fully, finally and forever resolve, discharge and settle the Released Class Claims against the Released Class Persons and the Released Derivative Claims against the Released Derivative Persons, but not the Non-Released Claims, upon and subject to the terms and conditions hereof and subject to the approval of the Court.

## I.    THE CLASS ACTIONS AND THE DERIVATIVE ACTIONS

On and after September 9, 2005, multiple actions were filed in the Court as class actions on behalf of persons who purchased or otherwise acquired certain of the publicly traded shares of DHB alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§78(j)(b) and 78(t). On January 31, 2006, the Court consolidated the class actions as *In re DHB Industries, Inc. Sec. Litig.*, No. CV 05-4296(JS)(ETB) and appointed RS Holdings, NECA-IBEW Pension Fund (the "Decatur Group") and George Baciu as Lead Plaintiffs (the "Lead Plaintiffs" or

the "Class Plaintiffs") and, pursuant to provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), approved the Class Plaintiffs' choice of Lerach Coughlin Stoia Geller Rudman & Robbins LLP and Labaton Sucharow & Rudoff LLP as Lead Counsel.

On and after September 14, 2005, multiple actions were filed in the Court as derivative actions on behalf of DHB. The complaints in the derivative actions generally allege causes of action for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. On January 31, 2006, the Court consolidated the derivative actions filed as *In re DHB Industries, Inc. Derivative Litigation*, No. CV 05-4345(JS)(ETB) and appointed Robbins Umeda & Fink, LLP and Law Offices of Thomas G. Amon as Co-Lead Counsel.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Class Plaintiffs and the Derivative Plaintiff (collectively the "Plaintiffs") in the Actions. The Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them or any of them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Actions, or either of them. The Defendants also have denied and continue to deny, *inter alia*, the allegations that the Plaintiffs, the Class Members or DHB have suffered damage, that the price of DHB's common stock was artificially inflated by reason of any alleged misrepresentations, non-disclosures or otherwise, or that the Plaintiffs, the Class Members or DHB were harmed by any of the conduct alleged in the Actions or that could have been alleged therein, or either of them.

Nonetheless, the Defendants have concluded that further conduct of the Actions would be protracted, expensive, and distracting, including, without limitation, to DHB and its management, and that it is desirable that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. The Defendants also have taken into account the

uncertainty and risks inherent in any litigation, especially in complex cases like the Actions. The Defendants have, therefore, determined that it is desirable that the Actions be settled in the manner and upon the terms and conditions set forth in this Stipulation.

Neither this Stipulation nor any document referred to herein nor any action taken to carry out this Stipulation is, may be construed as or may be used as an admission by or against the Defendants, or any of them, of any fault, wrongdoing or liability whatsoever. Entering into or carrying out this Stipulation (or the Exhibits hereto) and any negotiations or proceedings related thereto shall not in any event be construed as, or be deemed to be evidence of, any admission or concession with regard to any of Plaintiffs' claims, or contrary to any of Defendants' denials and defenses, and shall not be offered by any of the Settling Parties, Class Members or Current DHB Shareholders in any action or proceeding in any court, administrative agency or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation (and the Exhibits hereto) or the provisions of any related agreement or release; except that this Stipulation and the Exhibits hereto may be filed in any of the Actions or related litigation, as evidence of the Settlement, or in any subsequent action against or by the Defendants or the Released Persons or any of them to support a claim or defense of *res judicata*, collateral estoppel, release or other theory of claim or issue preclusion or similar defense.

## III. CLAIMS OF THE CLASS PLAINTIFFS AND THE DERIVATIVE PLAINTIFF AND BENEFITS OF SETTLEMENT

The Plaintiffs believe that the claims asserted in the Actions have merit. However, counsel for the Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Actions against the Defendants through trial and appeal. Counsel for the Plaintiffs also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Actions, as well as the difficulties and delays inherent in such litigation. Counsel for the Plaintiffs also are mindful of the inherent problems of proof of, and

- 3 -

possible defenses to, the violations asserted in the Actions. Counsel for the Plaintiffs believe that the Settlement set forth in this Stipulation confers substantial benefits upon and is in the best interests of the Class and each of the Members of the Class. Counsel for the Derivative Plaintiff believe that the Settlement set forth in this Stipulation confers substantial benefits upon, and is also in the best interests of, DHB and the Current DHB Shareholders.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Class Plaintiffs (for themselves and the Class Members), the Derivative Plaintiff (derivatively on behalf of DHB), and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Actions and the Released Claims shall be finally and fully compromised, settled and released, and the Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Claimant" means any Class Member who submits a Proof of Claim and Release in such form and manner, and within such time, as the Court shall prescribe.

1.3    "Claims" means any and all claims, demands, rights, liabilities, damages and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, including, without limitation, "Unknown Claims" (as defined below) and claims for negligence, gross negligence, breach of fiduciary duty, breach of duty of care, breach of duty of loyalty, waste, insider trading, unjust enrichment, abuse of control, mismanagement, fraud, and violations of any local, state or federal statutes, rules, regulations or common law.

- 4 -

1.4    "Claims Administrator" means the firm of Gilardi & Co. LLC, P.O. Box 5100, Larkspur, CA 94977-5100, Telephone: 1-800-654-5763, www.gilardi.com.

1.5    "Class" means all Persons who purchased or otherwise acquired (including by exchange, conversion or otherwise) the publicly traded securities of DHB (including puts, calls and other securities) on or after November 18, 2003 until and including November 30, 2006, and were allegedly damaged thereby.  Excluded from the Class are the Defendants and Persons related to the Defendants, including any subsidiaries or affiliates of DHB; the officers and directors of DHB during the Class Period; members of the individual Defendants' immediate families; any person, firm, trust, officer, director or any individual or entity in which any Defendant has a controlling interest or which is related to, or affiliated with, any of the Defendants; and the legal representatives, agents, affiliates, heirs, successors in interest or assigns of any such excluded person or entity.  Also excluded from the Class are those Persons who timely and validly request to be excluded from the Class pursuant to the "Notice of Pendency and Settlement of Class Action" to be sent to Class Members.

1.6    "Class Defendants" means DHB, David H. Brooks, Terry Brooks, David Brooks International Inc., Andrew Brooks Industries Inc. (sued as Andrew Brooks International Inc.), Elizabeth Brooks Industries Inc. (sued as Elizabeth Brooks International Inc.), Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman and Barry Berkman.

1.7    "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶1.5 of this Section of this Stipulation.

1.8    "Class Period" means the period commencing on November 18, 2003 through and including November 30, 2006.

1.9     "Class Plaintiffs' Counsel" means Keith F. Park, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 655 W. Broadway, Suite 1900, San Diego, CA 92101, Samuel H. Rudman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200, Melville, NY 11747, and Lynda J. Grant, Labaton Sucharow & Rudoff LLP, 100 Park Avenue, 12th Floor, New York, NY 10017.

1.10     "Current DHB Shareholders" means any Person(s) who owned DHB common stock as of the date hereof.

1.11     "Defendants" means the Class Defendants and Derivative Defendants.

1.12     "Derivative Counsel" means Brian Robbins, Robbins Umeda & Fink, LLP, 610 West Ash Street, Suite 1800, San Diego, CA 92101 and Thomas G. Amon, Law Offices of Thomas G. Amon, 500 Fifth Avenue, Suite 1650, New York, NY 10110.

1.13     "Derivative Defendants" means nominal defendant DHB, David H. Brooks, Sandra Hatfield, Dawn M. Schlegel, Jerome Krantz, Gary Nadelman, Cary Chasin, Barry Berkman, Larry Ellis, Tactical Armor Products, Inc., David Brooks International Inc., Andrew Brooks Industries Inc. (sued as Andrew Brooks International Inc.), Elizabeth Brooks Industries Inc. (sued as Elizabeth Brooks International Inc.), Terry Brooks and Jeffrey Brooks.

1.14     "Derivative Plaintiff" means Alvin Viray.

1.15     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of this Section of this Stipulation shall have been met and have occurred, unless one or more of such conditions is waived or modified in writing and signed by Class Plaintiffs' Counsel, Derivative Counsel, and counsel for each of the Defendants.

1.16     "Escrow Agent" means Lerach Coughlin Stoia Geller Rudman & Robbins LLP. Further terms relating to the Escrow Agent are contained in a certain Escrow Agreement dated as of

July 27, 2006 (the "Escrow Agreement"). A copy of the Escrow Agreement is attached hereto as Exhibit A.

   1.17 "Final" means: (a) the date of final affirmance on an appeal of the Judgments, the expiration of the time for a petition for or a denial of a writ of certiorari to review the Judgments and, if certiorari is granted, the date of final affirmance of the Judgments following review pursuant to that grant; or (b) the date of final dismissal of any appeal from the Judgments or the final dismissal of any proceeding on certiorari to review the Judgments; or (c) if no appeal is filed, the expiration date of the applicable time for the filing or noticing of any appeal from the Judgments. Any proceeding or order, or any appeal or petition for a writ of certiorari, pertaining solely to any Plan of Allocation and/or application for or award of attorneys' fees or expenses, shall not in any way delay or preclude the Judgments from becoming Final.

   1.18 "Judgments" means the final judgments to be rendered by the Court in the Actions, substantially in the forms attached hereto as Exhibits D and E.

   1.19 "Non-Released Claims" means all of DHB's obligations to David H. Brooks and to all of the other Defendants to whom DHB has indemnification obligations, of and for indemnification and reimbursement for fees, expenses and liabilities, as provided for in DHB's Articles of Incorporation and By-Laws, in the laws of Delaware, and in this Stipulation, as the latter is approved by the Court, all of which shall remain in full force and effect, and David H. Brooks' undertaking to DHB, regarding his indemnification by DHB, and the undertakings of the other Defendants to whom DHB has indemnification obligations, shall also remain in full force and effect. "Non-Released Claims" shall also include any and all obligations of any Defendant to any other Defendant under any existing contract or agreement between or among them, including, without limitation, any agreement entered into in connection with the Settlement.

1.20    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, and assignees.

1.21    "Plaintiffs' Counsel" means counsel who have appeared for any of the Plaintiffs in the Actions.

1.22    "Plan of Allocation" means a plan or formula or formulae of allocation of the Settlement Fund (to be described in the notice to be sent to Class Members), whereby the Settlement Fund, plus interest earned thereon, shall be distributed to Authorized Claimants after the payment of the expenses of notice and administration of the Settlement, Taxes and Tax Expenses and such attorneys' fees, expenses and interest and amounts to the Lead Plaintiffs as may be awarded by the Court.  The Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.23    "Related Persons" means each of a Defendant's present and former parents, subsidiaries, affiliates, divisions, joint ventures, joint venturers, and his, her or its present and former officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, advisors, investment advisors, auditors, accountants, spouses and immediate family members, and the predecessors, heirs, successors and assigns of any of them, and any Person in which any Related Person has or had a controlling interest or which is or was related to or affiliated with any Related Person, and any trust of which any Defendant is the settler or which is for the benefit of any Defendant and/or a member(s) of a Defendant's family.  Stockbrokers in their capacity as such are excluded from this definition.

1.24    "Released Claims" means, collectively, the Released Class Claims and the Released Derivative Claims, as defined below.

1.25    "Released Class Claims" means any and all Claims arising from either the purchase or other acquisition (including by an exchange, conversion or otherwise) of any publicly-traded securities of DHB, including, without limitation, put and call options thereon, during the Class Period and based on any facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act that were or could have been asserted by the Lead Plaintiffs or any Class Member in the Class Action, in a direct, indirect, representative, derivative or other capacity against the Released Class Persons, or any of them.

1.26    "Released Class Persons" means the Class Defendants and each of them, and each of their respective Related Persons in their capacities as such.

1.27    "Released Derivative Claims" means any and all Claims based on any facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act that were or could have been asserted by the Derivative Plaintiff on behalf of DHB, or by DHB on its own behalf, or by any Current DHB Shareholder in the Derivative Action, in a direct, indirect, representative, derivative or other capacity against the Released Derivative Persons, or any of them. In addition, Released Derivative Claims includes, without limitation, a release by DHB of David H. Brooks and Dawn M. Schlegel, and each of them, from any and all liability under §304 of the Sarbanes-Oxley Act of 2002 to reimburse DHB for any bonus or other incentive-based or equity based compensation received by them or either of them, or for any profits realized by them or either of them from the sale of any securities of DHB.

1.28    "Released Derivative Persons" means the Derivative Defendants, and each of them, and each of their respective Related Persons in their capacities as such.

1.29    "Released Persons" means, collectively, the Released Class Persons and the Released Derivative Persons.

1.30    "Settlement Fund" means the principal amount of Thirty-Five Million Two Hundred Thousand Dollars ($35,200,000) plus 3,184,713 shares of DHB common stock.

1.31    "Settling Parties" means, collectively, each of the Defendants, and the Class Plaintiffs and the Derivative Plaintiff on behalf of, respectively, themselves, the Members of the Class, the Current DHB Shareholders, and derivatively on behalf of DHB.

1.32    "Unknown Claims" means any Released Class Claims or any Released Derivative Claims which any Class Plaintiff or Class Member (as to Released Class Claims), and/or the Derivative Plaintiff, any Current DHB Shareholder, or DHB (as to Released Derivative Claims), respectively, does not know of or suspect to exist in his, her or its favor at the time of the release of the Released Class Persons and/or the Released Derivative Persons which, if known by him, her or it, might have affected his, her or its settlement with, and release of, the Released Class Persons and/or Released Derivative Persons, or might have affected his, her or its decision not to object to this Settlement. With respect to any and all Released Class Claims and Released Derivative Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Plaintiffs, the Derivative Plaintiff and DHB, and each of the Class Members and the Current DHB Shareholders, shall be deemed to have, and by operation of the Judgments shall have, waived the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Class Plaintiffs, the Derivative Plaintiff and DHB, and each of the Class Members and the Current DHB Shareholders, shall be deemed to have, and by operation of the Judgments shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of

the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Each of the Class Plaintiffs, the Derivative Plaintiff, the Class Members, DHB, and the Current DHB Shareholders, may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Released Class Claims or Released Derivative Claims, but each Class Plaintiff, Derivative Plaintiff and DHB, and each of the Class Members and the Current DHB Shareholders, upon the Effective Date, shall be deemed to have, and by operation of the Judgments shall have, fully, finally, and forever settled and released any and all Released Class Claims and Released Derivative Claims, respectively, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Plaintiffs, the Derivative Plaintiff, DHB, and the Class Members and the Current DHB Shareholders, shall be deemed by operation of the Judgments to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

      **2.**      **The Settlement**

             **a.**      **The Settlement Fund**

      2.1      The Class cash portion of the Settlement Fund is Thirty-Four Million Nine Hundred Thousand Dollars ($34,900,000) and the Derivative cash portion of the Settlement Fund is Three Hundred Thousand Dollars ($300,000). All but Twelve Million Eight Hundred Seventy Five Thousand Dollars ($12,875,000) of the cash portion of the Settlement Fund was deposited with the

Escrow Agent on July 31, 2006 and has been and will be maintained by the Escrow Agent pursuant to the terms of the Escrow Agreement.

2.2     The remaining Twelve Million, Eight Hundred Seventy Five Thousand Dollars ($12,875,000) of the cash portion of the Settlement Fund was deposited with the Escrow Agent by the Defendants' directors' and officers' liability insurers on August 14, 2006, and has been and also will be maintained by the Escrow Agent pursuant to the terms of the Escrow Agreement.

2.3     In the event the Settlement is not finally approved by the Court in substantially the form of, and containing substantially the same provisions as those set forth in this Stipulation, then the cash portion of the Settlement Fund, plus interest earned thereon, less any permitted expenses therefrom, shall be paid, distributed and/or held by the Escrow Agent in the amounts and to the Persons and in the manner provided for in the Escrow Agreement.

2.4     On the Effective Date, DHB shall deliver to the Claims Administrator 3,184,713 shares of DHB's common stock.  The common stock shall be exempt from registration under §3(a)(10) of the Securities Act of 1933, or registered, if no exemption is available, and shall be freely tradable, except as to Class Members who are affiliates of DHB, as defined in the federal securities laws.  DHB shall be responsible for the costs of registering the stock, if required.  While the Settling Parties acknowledge that DHB's common stock is currently delisted, DHB will undertake its best efforts to obtain a relisting of such shares on the American Stock Exchange and, if and when relisted, to maintain such listing for a period of at least one year.  The total number of shares of DHB's common stock to be contributed to the Settlement Fund will be adjusted to reflect any changes until the time of distribution of the stock to the Authorized Claimants due to stock dividends, stock splits, reverse stock splits, or reclassification (including reclassification in connection with a consolidation or merger in which DHB is the surviving entity) (any of the

- 12 -

foregoing events shall be considered an "Adjustment Event") that occur from the date of this Stipulation until the date of distribution to the Authorized Claimants, such that the percentage of ownership of the equity of DHB represented by this block of DHB stock will remain the same as it was immediately prior to the occurrence of the Adjustment Event.

### b.    The Escrow Agent

2.5    The Escrow Agent shall invest the cash portion of the Settlement Fund deposited pursuant to ¶¶2.1 and 2.2 above in instruments backed by the full faith and credit of the United States Government or insured by the United States Government or an agency thereof and shall reinvest the proceeds of those instruments as they mature in similar instruments at their then current market rates, as provided in the Escrow Agreement.

2.6    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, in the Escrow Agreement, or pursuant to a written agreement among counsel for DHB, counsel for David H. Brooks and Class Plaintiffs' Counsel.

2.7    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation and the Escrow Agreement.

2.8    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court.

2.9    The Escrow Agent shall establish a "Notice and Administration Fund," and deposit $200,000 from the Settlement Fund in it.  The Notice and Administration Fund shall be used by Class Plaintiffs' Counsel to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class and the Current DHB Shareholders, identifying and locating Class Members and Current DHB Shareholders, soliciting Class claims, assisting with the filing of claims, administering and distributing the "Net Settlement Fund," as defined below in ¶5.1, to Authorized

Claimants, processing Proof of Claim and Release forms and paying escrow costs, if any. The Notice and Administration Fund, like the other cash portion of the Settlement Fund, shall be invested and earn interest as provided for in the Escrow Agreement. Any portion of the Notice and Administration Fund remaining after the payment of the aforesaid costs and expenses shall revert to the Settlement Fund and become part of the Net Settlement Fund, as defined below in ¶5.1.

### c.    Taxes, Tax Expenses and Related Matters

2.10    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §§1.468B-1 through 1.468B-5. In addition, the Escrow Agent shall timely make such elections as are necessary or advisable to carry out the provisions of this ¶2.10, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filings to occur.

(a)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. §1.468B-2(k)(l)). Such returns (as well as the election described in this ¶2.10) shall be consistent with this ¶2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the cash portion of the Settlement Fund as provided in ¶2.10(b) hereof.

(b)      All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants, their insurers or their respective counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, the returns described in this ¶2.10) ("Tax Expenses") shall be paid out of the cash portion of the Settlement Fund; in all events, the Defendants, their insurers, and their respective counsel shall not have any liability or responsibility for any Taxes or any Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  From the cash portion of the Settlement Fund, the Escrow Agent shall indemnify and hold harmless the Defendants, their insurers and their respective counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the cash portion of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such Taxes and Tax Expenses, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither the Defendants, their insurers nor their respective counsel are responsible to pay such Taxes and Tax Expenses, nor shall they have any liability or responsibility therefor.  The Settling Parties hereto

agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.10.

(c)     For the purpose of this ¶2.10, references to the Settlement Fund shall include both the Settlement Fund and the Notice and Administration Fund established therefrom and shall also include any interest thereon.

### d.     Termination of Settlement

2.11     In the event that the Effective Date does not occur, or the Settlement is not approved by the Court, or is terminated for any other reason, the cash portion of the Settlement Fund shall be refunded as described in ¶7.4 below.

### e.     Additional Settlement Consideration – Corporate Governance

2.12     DHB, through its Board of Directors, shall adopt the Corporate Governance Principles and Policies set forth below, as soon as practicable after the Effective Date and shall maintain the same in effect for at least two years.  The Settling Parties acknowledge that the Corporate Governance Principles and Policies set forth below were jointly developed and negotiated by the Lead Plaintiffs and Lead Counsel in the Class Action and the Derivative Action.

2.13     Nothing in these Principles and Policies shall dilute any existing or future legal requirements to which DHB is subject as a public corporation or as a publicly-traded stock on any national listing.

### CORPORATE GOVERNANCE PRINCIPLES AND POLICIES

### A.     THE ROLE OF THE BOARD OF DIRECTORS

### 1.     Direct the Affairs of DHB Industries Inc. (the "Company") for the Benefit of Stockholders

The primary responsibility of directors is to oversee the affairs of the Company for the benefit of stockholders. The Board of Directors (the "Board") agrees that day-to-day management of the Company is the responsibility of management and that the role of the Board is to oversee management's performance

- 16 -

of that function. The Board shall also mandate and administer a corporate compliance program, which shall include the creation of a Company Code of Business and Ethics, the maintenance of accounting, financial and other controls, and the review of the adequacy of such controls.

**2.      Long Range Strategy Development**

Long range strategic issues should be discussed as a matter of course at regular Board meetings. The Board may choose to devote one of its regularly scheduled meetings exclusively to strategic planning.

**3.      Review of Financial Goals and Performance**

The Board reviews the annual operating plan and specific goals at the start of the fiscal year and financial performance quarterly (actual and in comparison to plan). The Board also believes it is important to establish and evaluate both short and long term objectives.

**4.      Ethical Business Environment**

The Board insists on an ethical business environment that focuses on adherence to both the letter and the spirit of regulatory and legal mandates. The Board expects that management will conduct operations in a manner supportive of this view. The Board is committed to avoiding any transactions that compromise, or appear to compromise, director independence. The Company shall prepare for the Board's review and approval a Code of Business Conduct and Ethics, and shall receive periodic reports from the Company's General Counsel with respect to such Code.

**5.      Chairman and Chief Executive Officer Performance Evaluation**

The Chairman and Chief Executive Officer's performance should be evaluated annually and as a regular part of any decision with respect to their respective compensation. The Board shall delegate the performance and compensation evaluation as it deems appropriate to specified Board members or to the Compensation Committee of the Board. Notwithstanding such delegation, however, the Board as a whole shall be responsible for the oversight of the Chairman, Chief Executive Officer and senior management. The offices of the Chairman and the Chief Executive Officer may be from time to time combined and may be from time to time separated. The Board has discretion in combining or separating the positions as it deems appropriate in light of prevailing circumstances.

**6.      Succession Planning**

The Board is responsible for succession planning. The Board will have the Chairman and Chief Executive Officer annually review with the independent directors the abilities of the key senior managers and their likely successors. Additionally, the independent directors may meet periodically to discuss, among

other things, management succession issues. As part of the succession and development process, the Board, or at the Board's direction, the Compensation Committee, will familiarize itself with the Chairman's and Chief Executive Officer's direct reports through periodic management and operating reports and meetings. The independent directors shall call a meeting upon any sudden temporary or permanent incapacity of the Chairman or Chief Executive Officer.

**7.      Material Transactions**

The Board shall evaluate and, if appropriate, approve all material Company transactions not arising in the ordinary course of business.

**8.      Stockholder Communications; Attendance at Annual Stockholders Meetings**

The Board shall establish procedures to allow for stockholders to communicate directly with the Board, the non-management directors, and the committees of the Board.  To further facilitate stockholder communication with the Board, all directors are encouraged to attend the Company's Annual Meeting of Stockholders.

**9.      Governing Documents**

In the event of any conflict between the Company's Certificate of Incorporation, By-laws and these Principles and Policies, the Certificate shall first govern and next the By-law and then these Principles and Policies, in that order.

**B.      MEETINGS OF THE BOARD OF DIRECTORS**

**1.      Selection of Chairman of the Board**

The Chairman of the Board shall be selected by the Board. The Chairman will be elected annually and shall serve at the pleasure of the Board.

**2.      Frequency of Meetings**

The Board will regularly meet at least one time each quarter and one quarterly meeting may be in conjunction with the annual meeting of stockholders. An annual calendar for the succeeding year will be agreed upon from time to time. Special meetings may be called as necessary.

While the Board recognizes that directors discharge their duties in a variety of ways, including personal meetings and telephone contact with management and others regarding the business and affairs of the Company, the Board shall inform its members that it feels it is the responsibility of individual directors to make themselves available to attend both regular and special Board and committee meetings on a consistent basis.  Active attendance at meetings shall be taken into account in the determination whether to nominate for reelection any director.

3.      **Meetings of Independent Directors**

Independent directors should meet routinely and regularly without management as they deem appropriate in their discretion, and should meet at any time upon the request of any director.

4.      **Access to Management and Outside Experts**

Board members shall have reasonable direct access to the Chairman, Chief Executive Officer, Chief Operating Officer and General Counsel, in their discretion. The Board shall have access to other members of senior management on a case by case basis after a courtesy call to the Chairman or Chief Executive Officer. Upon prior notice to the Chairman and/or General Counsel, the Board or a Board committee may seek legal or other expert advice from a source independent of management. Board members will use judgment to ensure that contact with management is not distracting to the business operation of the Company and that such contact, if in writing, be copied to the Chairman, Chief Executive Officer and General Counsel.

5.      **Attendance of Non-Directors at Meetings**

The Chairman and the Chief Executive Officer shall have discretion to invite any members of management, other Company employees or third parties they deem appropriate to attend Board meetings at appropriate times, subject to the Board's right to request that such attendance be limited or discontinued. The Board shall have the authority to request non-management guests to sign a confidentiality agreement in form satisfactory to the General Counsel prior to such guest's participation in any Board or committee meeting. The Board and committees may exclude any guest from part or all of any meeting upon its determination that it is in the best interests of the Company to do so.

6.      **Agendas and Presentations**

The Board shall indicate it believes the Chairman and Chief Executive Officer are jointly responsible, and should establish, the agenda for each Board meeting, taking into account suggestions of Board members. Board members may include particular items on the agenda by contacting the Chairman and the Chief Executive Officer and the Chairman and Chief Executive Officer are expected to ask directors for their suggestions or opinions on possible agenda items before each meeting.

As with the agenda, the Board shall indicate it believes that the Chairman and Chief Executive Officer should determine the form of each presentation to the Board and the person to make such presentation. Each meeting should include reports from the Board committees, as appropriate.

It shall be the policy of the Board that the Chief Executive Officer or Chief Financial Officer will give a presentation on the financial and operating results of the Company and related issues at each Board meeting.

**7.     Information Flow**

The Board shall receive salient information helpful in understanding the presentations, discussions and issues to be covered at such meeting, in writing and sufficiently in advance of such meeting to permit appropriate review. Where appropriate, longer and more complex documents shall contain executive summaries. Absent unusual circumstances, in no event will such information be distributed less than three days in advance of any regular Board meeting and 24 hours in advance of any special meeting.

The Board shall periodically review the information flow to Board members to ensure that directors receive the right kind and amount of information from management in sufficient time to prepare for meetings. The Chairman or Chief Executive Officer, or their designee, shall coordinate the information flow to the directors, periodically discuss director satisfaction with Board materials with individual directors and encourage directors to offer suggestions on materials.  In addition, this topic shall be considered annually by the independent directors as part of its regular review of Board performance.

**8.     Additional Service**

From time to time the Company may request the services of a Board member other than in his or her capacity as a director. In such situations, before assigning any task to a Board member that would require additional compensation, the Chairman, Chief Executive Officer or General Counsel shall first review such assignment with the Compensation Committee. Any Board member requested to perform services by the Company that he or she believes do not lie within his or her capacity as a director, shall inform the Compensation Committee prior to accepting such assignment.  Any such engagement will be consistent with the independence requirements of the American Stock Exchange.

**C.     BOARD STRUCTURE**

**1.     Composition of Board**

The majority of the members of the Board shall be independent directors. Independent directors should have appropriate skills and characteristics required of Board members. This assessment should include issues of diversity, age and skills, all in the context of an assessment of the perceived needs of the Board at that point in time.  Unless otherwise determined by a majority of the independent directors, all independent directors shall offer their resignation as a matter of course upon a change in employer or other significant changes in their professional roles or responsibilities that might reasonably be seen to affect their ability to serve, and the Board shall consider the appropriateness of continued service in light of such

changes. Any such resignation shall be communicated to the Chairman or Chief Executive Officer and may be considered by the Board or by the independent directors.

The Chairman, Chief Executive Officer, and any other directors other than independent directors, shall offer his or her resignation from the Board as a matter of course upon resignation or any other significant change in his or her professional roles or responsibilities, unless otherwise provided in such individual's employment, consulting or other agreement with the Company.

Any resignation submitted as a matter of course shall be reviewed by the Board as a whole or at the Board's direction the independent directors, and, if the Board or such independent directors determines that such director continues to contribute significantly to the Company, the director's membership on the Board may continue.

Paragraph 18 of the Memorandum of Understanding is incorporated herein.

**2.    Definition of Independent Director**

The Board of Directors defines an "independent director" as a director who, in the opinion of the Board meets the independence requirements of the American Stock Exchange or other market or exchange on which the Company's stock may be listed. To evaluate "independence," the Board may consider all relevant factors. The Board recognizes that director independence is an issue that is actively being reviewed by multiple constituencies and may amend its criteria for determining what constitutes an "independent director" to reflect changing standards.

**3.    Size of the Board**

The Board acknowledges that it should not be too large and understands that the size of the Board will fluctuate from time to time depending on circumstances. The independent directors will make recommendations regarding increasing or decreasing size from time to time.

**4.    Director Retirement Age and Term Limits**

The Board believes that consistent quality in the directorship can be achieved effectively without term limits or any mandatory retirement age. However, each director shall stand for election or re-election annually and serve a one-year term.

**5.    Director Appointments**

A majority of the independent directors shall nominate candidates for election to the Board. It is the independent directors' responsibility to make director recommendations to the full Board for appointments to fill vacancies of any unexpired term on the Board and to recommend nominees for submission to stockholders for approval at the time of the Annual Meeting.

The Company does not set specific criteria for directors except to the extent required to meet applicable legal, regulatory and exchange requirements. The Board shall seek candidates that show evidence of leadership in their particular field, have broad experience and the ability to exercise sound business judgment, have specific knowledge about the Company's business and be able to network in a way to promote the Company's interests.

**6.      Director Evaluation**

The independent directors shall prepare, for the Board's review and approval, Board and director assessment methods and criteria, taking the Chairman's and Chief Executive Officer's views into consideration. The independent directors shall annually evaluate the Board's overall performance and evaluate individual directors performance using the Board approved methods and criteria for such review.

**7.      Director Compensation and Stock Ownership**

The Board believes that the level of director compensation generally should be competitive with that paid to directors of other corporations of similar size and profile in the United States. The Compensation Committee is responsible for making recommendations for the full Board's review and approval with respect to director compensation and benefit programs.

**8.      Interlocking Directorates**

All directors shall seek approval from the independent directors prior to accepting any other board memberships in for-profit companies to avoid legally impermissible interlocking directorships or other conflicts of interest; provided that no director shall serve on more than four (4) outside public boards of for-profit companies. Similarly, the Chairman, Chief Executive Officer and other members of management shall seek approval of the Board prior to accepting outside board memberships in for-profit companies.

**D.      COMMITTEES OF THE BOARD**

**1.      Number and Types of Committees**

The Board shall create and disband committees depending on the particular interests of the Board, issues facing the Company and legal requirements. The current "standing" committees of the Board (that is, committees expected to operate over an extended period) are the Audit Committee, the Compensation Committee, and the Corporate Governance Committee. Each Committee shall be comprised solely of Independent Directors, as described in §C.2. The independent directors shall periodically recommend changes to the composition of the Board committees. Directors shall be free to make suggestions regarding committees at any time and are encouraged to do so. The Board shall consider from time to time the committee structure as part of the review of overall Board effectiveness. The composition, members and responsibilities will also be defined periodically by the Board.

**2.      Assignment and Rotation of Committee Members**

The Board shall make assignments within the following guidelines: assignments may be rotated periodically, though not necessarily within any specified time frame; all shall be comprised solely of independent directors; and committee assignments must comply with any applicable stock exchange and legal requirements.  The Chairman of the Audit Committee and other Audit Committee members shall meet the financial sophistication and independence requirements of the American Stock Exchange and applicable law.

**3.      Frequency of Committee Meetings**

Management will generally recommend an annual committee meeting schedule for all standing committees, but it shall be the responsibility of committee chairpersons, in consultation with committee members, to determine the frequency and length of committee meetings.  The Audit Committee will meet at least quarterly; other committees will meet at least twice annually.

**4.      Committee Agendas**

Committee chairpersons, in consultation with appropriate members of management and committee members, shall determine committee agendas. Any director may suggest an item for consideration as part of any committee agenda. The Chief Financial Officer will act as the primary management liaison to provide committees requested financial data and analyses. The General Counsel will act as the management liaison to assemble and distribute agendas and facilitate minutes and reports preparation.

**5.      Committee Reports**

Reports of committee meetings are submitted to the full Board following each committee meeting. Committee actions shall be binding consistent with such Committee's charter and applicable corporate law. Committee chairpersons shall be offered the opportunity to comment or report on committee activities at each Board meeting.

**6.      Specific Roles and Responsibilities**

The specific roles and responsibilities of each committee shall be outlined in their respective charters.

**f.      Additional Settlement Consideration – Resignations**

2.14    David H. Brooks has voluntarily resigned from the Board of Directors of DHB and

from all of the other positions held by him in DHB and its subsidiaries.

2.15    To the extent that they may be serving on DHB's Board of Directors at the time of the Effective Date of the Settlement, Cary Chasin, Gary Nadelman and Barry Berkman shall be replaced as Board members within one year thereafter.

2.16    Upon cessation of employment with DHB and/or service on its Board of Directors, and for a period of time of 5 years thereafter, David H. Brooks, Dawn M. Schlegel, Sandra Hatfield, Cary Chasin, Jerome Krantz, Gary Nadelman and Barry Berkman will not be employed (directly or indirectly) by DHB or any of its subsidiaries or affiliates (but not including Tactical Armor Products, Inc., if the same may be deemed to be such an affiliate), including, but not limited to, serving as any manner of consultant or in any capacity on or in service to the Board of Directors.  This same restriction on employment shall apply to Terry Brooks and Jeffrey Brooks, commencing as of the Effective Date.

### 3.    Preliminary Approval, Notice Orders and Settlement Hearing

3.1    Promptly after execution of this Stipulation by all parties hereto, Class Plaintiffs' Counsel and Derivative Counsel shall submit this Stipulation, together with its Exhibits, to the Court and shall apply for entry of orders (the "Notice Orders"), substantially in the form of Exhibits B and C attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, and approval for the mailing and publication of settlement notices (the "Notices"), substantially in the form of Exhibits B-1, B-3, C-1 and C-2 attached hereto, which shall include the general terms of the Settlement set forth in this Stipulation, the Plan of Allocation, the general terms of the Class Fee and Expense Application and the Derivative Fee and Expense Application, as defined in ¶¶6.2 and 6.5 below, and the date of the Settlement Hearing, as defined below in ¶3.2. Class Plaintiffs' Counsel shall be responsible for providing notice to the Class.  Derivative Counsel shall be responsible for providing notice to the Current DHB Shareholders.

3.2    Class Plaintiffs' Counsel and Derivative Counsel shall request that, after the Notices are mailed and published, the Court hold a hearing (the "Settlement Hearing") to consider and determine whether an order approving the Settlement as fair, reasonable and adequate should be entered and whether Judgments should be entered thereon dismissing the Class Action and Derivative Action with prejudice, and that the Court thereafter approve the Settlement and dismiss the Class Action and Derivative Action with prejudice.  At or after the Settlement Hearing, Class Plaintiffs' Counsel also will request that the Court approve the Plan of Allocation and the Class Fee and Expense Application, and Derivative Counsel also will request that the Court approve the Derivative Fee and Expense Application.

### 4.    Releases, Bar and Indemnification

4.1    Upon the Effective Date, the Class Plaintiffs, the Derivative Plaintiff and DHB, and each of the Class Members (whether or not any such Class Member executes and delivers a Proof of Claim and Release) and each of the Current DHB Shareholders, on behalf of themselves and each of their respective predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members, having any legal or beneficial interest in the publicly traded securities of DHB during the Class Period, shall be deemed to have, and by operation of the Judgments shall have, fully, finally, and forever released, relinquished and discharged all Released Class Claims and all Released Derivative Claims, as the case may be, and any and all claims relating to or arising out of or connected with the Settlement or resolution of the Actions, against all of the Released Class Persons and the Released Derivative Persons, respectively.

4.2    Upon the Effective Date, the Class Plaintiffs, the Derivative Plaintiff and DHB, and each of the Class Members (whether or not any such Class Member executes and delivers a Proof of Claim and Release) and each of the Current DHB Shareholders, and each of their respective

predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members, having any legal or beneficial interest in the publicly traded securities of DHB during the Class Period, will be forever barred and enjoined from commencing, instituting or prosecuting any of the Released Class Claims or any of the Released Derivative Claims, as the case may be, in any action or other proceeding, against any of the Released Class Persons or any of the Released Derivative Persons, respectively.

4.3     The Derivative Plaintiff and DHB further agree that the approval of the Settlement and the dismissal of the Derivative Action shall act to bar the prosecution, by DHB or derivatively on behalf of DHB, of any duplicative or similar claims as those set forth in, or that could or might have been set forth in, the Derivative Action, or of any of the Released Derivative Claims.

4.4     The Proof of Claim and Release to be executed by Class Members shall release all Released Class Claims against all of the Released Class Persons and shall be substantially in the form contained in Exhibit B-2 attached hereto.

4.5     Upon the Effective Date, as more specifically provided for in the Judgments attached hereto as Exhibits D and E, each of the Released Class Persons and Released Derivative Persons shall be deemed to have, and by operation of the Judgments shall have, fully, finally, and forever released, relinquished and discharged the Class Plaintiffs, the Derivative Plaintiff, each and all of the Class Members, each and all of the Current DHB Shareholders, DHB, and Plaintiffs' Counsel, as the case may be, from all Claims (including all Unknown Claims) relating to or arising out of or connected with the institution, prosecution, assertion, settlement or resolution of the Actions, except that nothing in this Stipulation shall affect any Person's rights to enforce the terms of this Stipulation, any of the Non-Released Claims, or any agreements, claims, rights, or obligations that

- 26 -

do or may hereafter exist between or among the Released Class Persons, or any of them, or the Released Derivative Persons, or any of them, as the case may be.

4.6    Notwithstanding the foregoing releases, all of DHB's obligations to David H. Brooks and to all of the other Defendants to whom DHB has indemnification obligations, of and for indemnification and reimbursement for fees, expenses and liabilities, as provided for in DHB's Articles of Incorporation and By-Laws, in the laws of Delaware, and in this Stipulation, as the latter is approved by the Court, shall remain in full force and effect, and David H. Brooks' undertaking to DHB regarding his indemnification by DHB and the undertakings of the other Defendants to whom DHB has indemnification obligations, shall also remain in full force and effect.  Further, notwithstanding the foregoing releases, any and all obligations of any Defendant to any other Defendant under any existing contract or agreement between or among any of them shall also remain in full force and effect, including, without limitation, any agreement entered into in connection with the Settlement.

4.7    In addition, DHB shall indemnify defendants David H. Brooks and Dawn M. Schlegel, and each of them, against any liability under §304 of the Sarbanes-Oxley Act of 2002 incurred by them, or either of them, in any action brought by a third party under §304, and to pay to them, and to each of them, an amount equal to any payment made by them, or either of them, to DHB pursuant to any judgment in any such action.

4.8    Pending final determination of whether the Settlement should be approved and applied in the Actions, all proceedings and all further activity by, between or among the Settling Parties regarding or directed towards the Actions, save for those activities and proceedings relating to this Stipulation or the Settlement, shall be stayed.

4.9     Pending final determination of whether the Settlement should be approved and applied in the Actions, neither the Class Plaintiffs, nor the Derivative Plaintiff, nor DHB, nor any of the Class Members, nor the Current DHB Shareholders, shall commence, maintain or prosecute against the Defendants, the other Released Class Persons, the other Released Derivative Persons, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Class Claims or Released Derivative Claims.

5.     **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court and/or Class Plaintiffs' Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.  The Settlement Fund shall be applied as follows:

(a)     to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, identifying and locating Class Members and Current DHB Shareholders, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.10 above;

(c)     to pay to Plaintiffs' Counsel attorneys' fees and expenses with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)     to reimburse the time and expenses of the Lead Plaintiffs, if and to the extent allowed by the Court.

Subject to the provisions of ¶5.2(c) below, the balance of the Settlement Fund (the "Net Settlement Fund") shall be distributed to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, and the Court.

5.2     Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plan of Allocation, and such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)     Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit B-2 attached hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to such Person.

(b)     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, and all Class Members whose claims are not approved by the Court (in the event the same are rejected in whole or in part by the Claims Administrator and the Court resolves the dispute involved) shall be forever barred from receiving any Settlement payment pursuant to this Stipulation, or otherwise, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgments, and be enjoined and barred from bringing any action against any of the Released Class Persons asserting any of the Released Class Claims.  Notwithstanding the foregoing, Class Plaintiffs' Counsel shall

have the discretion to accept late submitted claims for processing, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

(c)    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice to the Class Members and approved by the Court.  However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), such balance shall be donated to an appropriate 501(c)(3) non-profit organization(s) to be selected by Class Plaintiffs' Counsel, with prior written notice to Defendants' counsel.

5.3    Subject to the terms of the Escrow Agreement, the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, the payment of Tax Expenses, the payment of any attorneys' fees and expenses incurred on behalf of Plaintiffs to the Actions, or any losses incurred in connection therewith.

5.4    No Person shall have any claim against Class Plaintiffs, Class Plaintiffs' Counsel, the Claims Administrator, any agent designated by Class Plaintiffs' Counsel, Defendants or their respective counsel, based on the investment or distributions made substantially in accordance with this Stipulation, the Plan of Allocation, or further orders of the Court.

5.5    It is understood and agreed by the Settling Parties that the proposed Plan of Allocation including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order

or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgments, or any other orders entered pursuant to this Stipulation.  The Plan of Allocation shall be prepared by Class Plaintiffs' Counsel, and Defendants shall have no responsibility or liability therefor.

> **6.    Plaintiffs' Counsel's Attorneys' Fees and Reimbursement of Expenses and Reimbursement of the Lead Plaintiffs**

6.1    If so ordered by the Court upon preliminary approval of the Settlement by the Court, Class Plaintiffs' Counsel and Derivative Counsel shall be entitled to provisional reimbursement of 75% of their out-of-pocket expenses, subject to Class Plaintiffs' Counsel's and Derivative Counsel's several obligation to make appropriate refunds or repayments to the Settlement Fund plus interest at the same rate as earned on the cash portion of the Settlement Fund if, and when, as a result of any order, the final fee and/or expense award is lower than that amount, or there shall ultimately be no award of fees and expenses.

6.2    Class Plaintiffs' Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; (b) plus reimbursement of expenses incurred in connection with prosecuting the Class Action; (c) plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the cash portion of the Settlement Fund (until paid) as may be awarded by the Court; and (d) reimbursement of the costs and expenses of the Lead Plaintiffs prosecuting the Class Action. Class Plaintiffs' Counsel reserve the right to make additional applications for fees and expenses incurred.

6.3    The Fee and Expense Award shall be paid to Class Plaintiffs' Counsel from the Settlement Fund, as ordered, immediately after the Court executes a written order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or any

potential appeal therefrom, subject to the several obligation of Class Plaintiffs' Counsel to make appropriate refund repayments to the Settlement Fund as more particularly set forth below in ¶6.4. Class Plaintiffs' Counsel shall thereafter allocate the attorneys' fees amongst Class Plaintiffs' Counsel in a manner in which Class Plaintiffs' Counsel in good faith believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Actions.

6.4     In the event that the Effective Date does not occur, or the Judgments or the order making the Fee and Expense Award are/is reversed or modified, or this Stipulation is terminated for any reason, and in the event that the Fee and Expense Award shall have been paid to any extent, then Class Plaintiffs' Counsel shall, within five (5) business days from Class Plaintiffs' Counsel receiving notice from DHB's or David H. Brooks' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, the fees and expenses previously paid to them from the Settlement Fund, plus interest thereon at the same rate as earned by the cash portion of the Settlement Fund, in an amount consistent with such reversal or modification. Each Class Plaintiffs' Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this subparagraph. Without limitation, each such law firm and its partners and/or shareholders agree that the Court may, upon application of counsel for DHB or David H. Brooks, on notice to Class Plaintiffs' Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them should such law firm fail timely to repay fees, expenses and interest pursuant to this ¶6.4.

6.5     Derivative Counsel may apply for fees and expenses to be paid from the Settlement Fund. The amount of such fees and expenses shall not exceed $300,000 (the "Derivative Fee and

Expense Application"), subject to such further negotiations as may occur between Class Plaintiffs' Counsel and Derivative Counsel in the Actions. Any amount awarded shall be subject to the same payment and repayment obligations by Derivative Counsel as set forth in ¶¶6.3 and 6.4 above.

6.6     The procedure for and the allowance or disallowance by the Court of any applications by any of the Plaintiffs' Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgments approving this Stipulation and the Settlement of the Actions set forth herein.

6.7     The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment to Counsel for any Plaintiff in the Actions, including any payment from the Settlement Fund, and no Plaintiffs' Counsel shall have recourse to the Related Persons, or any of them, for any such payments.

6.8     The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     This Stipulation, the Settlement and the Effective Date shall be conditioned on the occurrence of all of the following events:

(a)     the cash portion of the Settlement Fund shall have been deposited with the Escrow Agent as required by ¶¶2.1 and 2.2 above;

(b)      the Court shall have entered the Notice Orders, as required by ¶3.1, above and the same have been complied with;

(c)      the Defendants shall not have exercised the option to terminate this Stipulation pursuant to ¶7.3 hereof;

(d)      the Court shall have entered the Judgments substantially in the form of Exhibits D and E attached hereto; and

(e)      each of the Judgments shall have become Final, as defined in ¶1.17, above.

7.2      A condition of this Stipulation is that this Stipulation and Settlement shall be approved by the Court as provided herein. However, if (a) the Court enters a judgment, but not the Judgments substantially in the form of Exhibits D and E; or (b) the Court enters the Judgments and appellate review is sought and on such review either of the Judgments is materially modified or reversed; or (c) any of the conditions of ¶7.1 is not met, or satisfied, this Stipulation shall be canceled and terminated unless counsel to Class Plaintiffs' and Derivative Plaintiff and counsel for DHB and David H. Brooks (together with counsel for any other Defendants who is materially and adversely affected by any such change or failure), within ten days from the receipt of such ruling or written notice of such circumstances, agree in writing to proceed with this Stipulation and Settlement. For purposes of this ¶7.2, no order of the Court or modification or reversal on appeal of any order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses and interest awarded by the Court, shall be deemed a material modification of or a part of the material terms of the Judgments or this Stipulation, or shall constitute grounds for cancellation or termination of this Stipulation.

7.3      Defendants DHB and/or David H. Brooks, in their, its or his absolute discretion, as the case may be, shall have the option to cancel and terminate this Stipulation and the Settlement in

the event that Class Members who purchased or otherwise acquired more than a certain number of DHB shares of common stock during the Class Period choose to exclude themselves from the Class, all as set forth in a separate agreement (the "Supplemental Agreement") executed among the signatories to this Stipulation.  The Supplemental Agreement will not be filed with the Court unless and until a dispute arises between the Class Plaintiffs and Defendants concerning its interpretation or application.  Copies of all requests for exclusion from the Class shall be delivered by overnight delivery to counsel for DHB and David H. Brooks by Class Plaintiffs' Counsel or the Claims Administrator as soon as practicable after receipt.

    7.4    In the event the Settlement is not approved by the Court or this Stipulation shall terminate or shall not become Effective for any reason, within seven (7) business days after written notification of such event is sent by same day or overnight delivery by counsel for DHB, David H. Brooks or Class Plaintiffs' Counsel to the Escrow Agent and all of the other parties hereto, the Settlement Fund (including accrued interest), plus any amount then remaining in the Notice and Administration Fund (including accrued interest), less expenses and any costs which have either been disbursed pursuant to ¶5.1(a) or (b) hereto, or are chargeable to the Notice and Administration Fund, shall be refunded or paid out by the Escrow Agent as directed by the terms of the Escrow Agreement.  At the request of counsel for DHB, or David H. Brooks, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any reasonable fees or expenses incurred in connection with such application(s) for refund, to such other person or entity as counsel for DHB and David H. Brooks may designate.

    7.5    In the event that the Settlement is not approved by the Court or this Stipulation shall terminate or shall not become Effective for any reason, the Settling Parties shall be restored to their respective positions in the Actions as of July 12, 2006, before the MOU was executed, and all

negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter or proposition and shall not be used in any manner or for any purpose in any subsequent proceeding in the Actions or in any other action or proceeding.  In such event, the terms and provisions of this Stipulation, with the exception of ¶¶1.1-1.32, 2.3, 2.5-2.11, 6.1, 6.4-6.8, 7.1-7.7, 8.4-8.15 herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Actions or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

7.6     If the Effective Date does not occur, or if this Stipulation is terminated or shall not become Effective for any reason, neither the Class Plaintiff, the Derivative Plaintiff nor any of their counsel shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to ¶5.1(a) or (b).

7.7     In the event that a material part of the amount paid for the benefit of the Class is determined to be a preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law by a final order of a court of competent jurisdiction and the Lead Plaintiffs in the Class Action are required to return such amount to any of the Defendants, then such Lead Plaintiffs shall have the right to either: (i) return that amount of the settlement, less the deductions specified in ¶5.1(a) or (b) applicable thereto, to that Defendant(s) and bring, revive, or reinstate all claims against that Defendant(s); or (ii) return the entire amount of the Settlement, less the deductions specified in ¶5.1(a) or (b), and bring, revive, or reinstate all claims against the Settling Defendants.

7.8     The Settling Parties agree that the Escrow Agent's receipt of the cash portion of the Settlement Fund, the Claims Administrator's receipt of the common stock described in ¶2.4 above, DHB's agreement to adopt the corporate governance provisions set forth in ¶2.13 above, and the additional consideration set forth in ¶¶2.14-2.16 above, constitutes the transfer of value in exchange for, among other things, the non-necessity of the Defendants defending the Class and Derivative Actions.

### 8.     Miscellaneous Provisions

8.1     The Settling Parties (a) acknowledge that it is their intent to consummate the terms and conditions of this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

8.2     Each Defendant warrants as to himself, herself, or itself that the transfer of the cash portion of the Settlement by or on his, her or its behalf will not render him, her or it insolvent.  This representation is made by each Defendant as to himself, herself or itself and is not made by any counsel for the Defendants.

8.3     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes among them with respect to the Actions.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  While the Defendants deny that the claims advanced in the Actions were meritorious, and that any Member of the Class or DHB sustained any injury, Defendants agree and the Judgments in the Actions will state, that the Actions were filed in good faith and in accordance with the applicable Federal Rules of Civil Procedure, including Rule 11 of the Federal Rules of Civil Procedure, and are being settled voluntarily after consultation with competent legal counsel.

8.4     Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Class Claims or Released Derivative Claim, or of any wrongdoing or liability of any of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Class Persons or Released Derivative Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Class Persons or Released Derivative Persons may file this Stipulation and/or the Judgments in any related litigation as evidence of the Settlement and in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5     All agreements made and orders entered during the course of the Actions relating to the confidentiality of information shall survive this Stipulation.

8.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all of the Settling Parties or their respective successors-in-interest.

8.8     This Stipulation and the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Stipulation, the Exhibits, or the Supplemental Agreement other than the representations, warranties and covenants contained and memorialized in such documents.   This Stipulation supersedes and replaces any prior or

contemporaneous writing, statement or understanding, including, without limitation, the Memorandum of Understanding pertaining to the Actions. Except as otherwise provided herein, all parties shall bear their own costs.

8.9     Counsel for the Settling Parties are expressly authorized by their respective clients to take all appropriate actions required or permitted to be taken pursuant to this Stipulation to effectuate its terms and conditions, including, without limitation, entering into any modifications or amendments to the Stipulation they deem appropriate.

8.10     Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.11     This Stipulation may be executed in one or more counterparts. All executed counterparts including facsimile counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court by Class Plaintiffs' Counsel.

8.12     This Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators and legal representatives.

8.13     Without affecting the finality of the Judgments entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and the Judgments, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and the Judgments.

8.14     This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and

obligations of the Settling Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

      8.15     Wherever in this Stipulation or in the Exhibits "notice," "notification," or the like is provided for, such "notice," "notification," or the like shall be in writing.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of November 30, 2006.

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
KEITH F. PARK
THOMAS G. WILHELM

                        s/ Keith F. Park
                        KEITH F. PARK

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LABATON SUCHAROW & RUDOFF LLP
LYNDA J. GRANT (LG-4784)
NICOLE M. ZEISS (NZ-3894)

                        s/ Lynda J. Grant
                        LYNDA J. GRANT

100 Park Avenue, 12th Floor
New York, NY  10017-5563
Telephone:  212/907-0700
212/818-0477 (fax)

Co-Lead Counsel for Plaintiffs

CAVANAGH & O'HARA
PATRICK O'HARA
407 East Adams Street
Springfield, IL  62701
Telephone:  217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiffs

LAW OFFICES OF THOMAS AMON


                    s/ Thomas Amon
_____
         THOMAS AMON

500 Fifth Avenue, Suite 1650
New York, NY  10110
Telephone:  212/810-2430
212/810-2427 (fax)

ROBBINS UMEDA & FINK, LLP
BRIAN ROBBINS


                    s/ Brian Robbins
_____
         BRIAN ROBBINS

610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

Co-Lead Counsel in the Derivative Action

BRYAN CAVE LLP
ERIC RIEDER
DAVID P. KASAKOVE


                    s/ David P. Kasakove
_____
         DAVID P. KASAKOVE

1290 Avenue of the Americas
New York, NY 10104
Telephone: 212/541-2000
212/541-4630 (fax)

Counsel for Defendant DHB Industries, Inc.

MILBANK TWEED HADLEY
    & McCLOY LLP
GEORGE S. CANELLOS
C. NEIL GRAY
DANIEL M. PERRY
ROBERT C. HORA


                        s/ C. Neil Gray
_____
                      C. NEIL GRAY

1 Chase Manhattan Plaza
New York, NY 10005-1413
Telephone: 212/530-5000
212/530-5219 (fax)

MINTZ LEVIN COHN FERRIS
    GLOVSKY AND POPEO, P.C.
R. ROBERT POPEO
JOHN F. SYLVIA


                        s/ R. Robert Popeo
_____
                      R. ROBERT POPEO

One Financial Center
Boston, MA 02111
Telephone: 617/542-6000
617/542-2241 (fax)

MINTZ LEVIN COHN FERRIS
    GLOVSKY AND POPEO, P.C.
JEROME GOTKIN


                        s/ Jerome Gotkin
_____
                      JEROME GOTKIN

666 Third Avenue
New York, NY  10017-4011
Telephone:  212/935-3000
212/983-3115 (fax)

Counsel for Defendant David H. Brooks

MILBANK TWEED HADLEY
   & McCLOY LLP
GEORGE S. CANELLOS
C. NEIL GRAY
DANIEL M. PERRY
ROBERT C. HORA


                       s/ C. Neil Gray
_____
                   C. NEIL GRAY

1 Chase Manhattan Plaza
New York, NY  10005-1413
Telephone:  212/530-5000
212/530-5219 (fax)

Counsel for Defendants David Brooks International
Inc., Andrew Brooks Industries Inc., sued as
Andrew Brooks International Inc., Elizabeth Brooks
Industries Inc., sued as Elizabeth Brooks
International Inc.

SERCARZ & RIOPELLE, LLP
ROLAND G. RIOPELLE


                    s/ Roland G. Riopelle
_____
                 ROLAND G. RIOPELLE

Carnegie Hall Tower
152 W. 57th Street, Suite 24C
New York, NY  10019
Telephone:  212/586-4900
212/586-1234 (fax)

Counsel for Defendant Sandra Hatfield

KOBRE & KIM LLP
STEVEN G. KOBRE


_____
                s/ Steven G. Kobre
                STEVEN G. KOBRE

800 Third Avenue
New York, NY 10022
Telephone: 212/488-1200
212/488-1220 (fax)

Counsel for Defendant Dawn Schlegel

CLIFFORD CHANCE US LLP
MARK HOLLAND
ROBERT G. HOUCK
MARY K. DULKA


_____
                s/ Mark Holland
                MARK HOLLAND

31 West 52nd Street
New York, NY 10019
Telephone: 212/878-8000
212/878-8375 (fax)

Counsel for Defendants Cary Chasin, Jerome
Krantz, Gary Nadelman, and Barry Berkman

DLA PIPER US LLP
STEPHANIE K. VOGEL


_____
                s/ Stephanie K. Vogel
                STEPHANIE K. VOGEL

1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/335-4500
212/335-4501 (fax)

- 45 -

Counsel for Defendant Larry R. Ellis

BRACEWELL & GIULIANI LLP
MARC LEE MUKASEY


                   s/ Marc Lee Mukasey
_____
           MARC LEE MUKASEY

1177 Avenue of the Americas
New York, NY  10036
Telephone:  212/508-6100
212/508-6101 (fax)

Counsel for Defendants Tactical Armor Products,
Inc. and Terry Brooks

BRAFMAN & ASSOCIATES, P.C.
BENJAMIN BRAFMAN
BRIAN E. KLEIN


                   s/ Benjamin Brafman
_____
           BENJAMIN BRAFMAN

767 Third Avenue
New York, NY  10017
Telephone:  212/750-7800
212/750-3906 (fax)

Counsel for Defendant Jeffrey Brooks

S:\Settlement\DHB Industries 05.set\12-14 CLN STP 00033201.doc

- 46 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2007, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.


s/ Keith F. Park
KEITH F. PARK

LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail:KeithP@lerachlaw.com

# Mailing Information for a Case 2:05-cv-04345-JS-ETB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas G. Amon**
  tamon@amonlaw.com

- **Richard B. Brualdi**
  rbrualdi@brualdilawfirm.com

- **George S. Canellos**
  gcanellos@milbank.com,cngray@milbank.com

- **Mary K Dulka**
  mary.dulka@cliffordchance.com

- **Jeffrey Fink**
  jfink@ruflaw.com

- **Mary Gail Gearns**
  marygail.gearns@bingham.com

- **Jerome Gotkin**
  jgotkin@mintz.com

- **Christopher Neil Gray**
  cngray@milbank.com

- **Mark Holland**
  mark.holland@cliffordchance.com

- **David Paul Kasakove**
  dpkasakove@bryancave.com

- **Michael S Kim**
  michael.kim@kobrekim.com

- **Phillip C. Kim**
  pkim@law.nyc.gov

- **Robert Popeo**
  rrpopeo@mintz.com

- **Roland G. Riopelle**
  rriopelle@sercarzandriopelle.com,rriopelle@juno.com

- **Brian Robbins**

brobbins@ruflaw.com,kzimmer@ruflaw.com,sputtick@ruflaw.com,dmaytorena@ruflaw.com

- **Howard M. Rogatnick**
  hmrogatnick@bryancave.com,dortiz@bryancave.com

- **Adam L. Sisitsky**
  asisitsky@mintz.com

- **John F. Sylvia**
  jsylvia@mintz.com

- **Catherine A. Torell**
  ctorell@cmht.com,lawinfo@cmht.com

- **Steven Wedeking**
  swedeking@ruflaw.com

- **Harry H. Wise , III**
  hwiselaw@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Brian Abrams

'

**Alvin Viray**

'

**EXHIBIT A**

## ESCROW AGREEMENT

ESCROW AGREEMENT, dated as of July 27, 2006, (the "Escrow Agreement") by and among DHB Industries, Inc. ("DHB"), David H. Brooks, Terry Brooks, David Brooks International Inc., Andrew Brooks Industries Inc., being sued as Andrew Brooks International Inc., Elizabeth Brooks Industries Inc., being sued as Elizabeth Brooks International Inc., Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry Ellis, Tactical Armor Products, Inc., and Jeffrey Brooks (all of the forgoing, together with DHB, being collectively referred to herein as the ("Settling Defendants"), RS Holdings, NECA-IBEW Pension Fund (the "Decatur Group") and George Bacini (all of the forgoing being collectively referred to herein as the "Lead Plaintiffs"), Alvin Viray ("Viray") and Lerach Coughlin Stola Geller Rudman & Robbins LLP (referred to herein as "Lead Counsel" or "Escrow Agent") having an address at 655 W. Broadway, Suite 1900, San Diego, California 92101.

WHEREAS, the Settling Defendants, the Lead Plaintiffs and Viray (hereinafter collectively referred to as the "Settling Parties") are all parties to a "Memorandum of Understanding" dated July 12, 2006 (the "MOU") with respect to settlement of litigation pending in the U.S. District Court in the Eastern District of New York; and

WHEREAS, pursuant to Paragraph 4 of the MOU, as amended herein by the Settling Parties, the Settling Parties have agreed that the Settling Defendants shall cause, on July 27, 2006, to be paid into escrow the principal sum of $22,325,000 in cash (the "July 27 Payment") and the insurers shall cause on August 14, 2006, to be paid into escrow the principal sum of $12,875,000 (the "August 14 Payment") in cash (collectively, the "Cash Settlement Amount") to be controlled by Lead Counsel in the pending litigation through an insured financial institution and subject to Court oversight; and

WHEREAS, the Escrow Agent has agreed to hold, invest, reinvest and/or release the Cash Settlement Amount pursuant to and in accordance with the terms hereof;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the MOU and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the MOU.

2.    <u>Appointment of the Escrow Agent</u>.  The Settling Parties hereby appoint and designate the Escrow Agent as escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment and designation, subject to the terms and conditions contained herein.

3.    <u>Delivery of Escrow Property</u>.  Simultaneously with the execution of this Escrow Agreement, the Settling Defendants have delivered or caused to be delivered to the account of the Escrow Agent at the Amalgamated Bank, 15 Union Square, West, New York, New York

LIT 1581125v.3

10003, the July 27 Payment, to be held by the Escrow Agent pursuant to the terms and conditions of this Escrow Agreement. On August 14, 2006, the Settling Defendants will deliver or caused to be delivered to the account of the Escrow Agent at the Amalgamated Bank, the August 14 Payment, to be held by the Escrow Agent pursuant to the terms and conditions of this Escrow Agreement. The Escrow Agent hereby acknowledges receipt of the July 27 Payment and agrees to hold and distribute the July 27 Payment and, when received, the August 14 Payment, and all interest accruing thereon (together, the "Escrowed Funds") as provided herein.

4.    Escrow of Funds. The Escrow Agent hereby agrees to hold the Escrowed Funds in escrow, and invest the Escrowed Funds in accordance with Paragraph 5 below, and to release the Escrowed Funds as follows:

(a)    Use of Escrowed Funds to pay expenses. Upon receipt by the Escrow Agent of written notification from the Court that the Court has preliminarily approved the Settlement, the Escrow Agent shall deliver a copy of such notification to the undersigned counsel for the Settling Defendants, and after 10 days from the delivery of such notice, may authorize the use, on a non-recourse, non-refundable basis, of a portion of the Escrowed Funds for the payment of those costs set forth and permitted in Paragraph 4 of the MOU.

(b)    Release of Escrowed Funds to Plaintiffs. Except as otherwise provided in Paragraphs 16 and 17 of the MOU, upon receipt by the Escrow Agent of a written Order from the Court that the Settlement, the Stipulation of Settlement and all related documents have been finally, fully and unconditionally approved by the Court, and after all applicable reconsideration and appeal periods have lapsed with respect to such Order, the Escrowed Funds shall be released by the Escrow Agent to Gilardi & Co. LLC to be distributed to and among Class Members who have submitted valid Proofs of Claim forms pursuant to the Plan of Allocation as finally approved by the Court.

(c)    Release of Escrowed Funds to Settling Defendants. Upon the earlier of (a) receipt by the Escrow Agent of a written Order from the Court that the Court has finally disapproved the Settlement, the Stipulation of Settlement and the related documents, and all available reconsideration and appeal periods have lapsed, or (b) the failure of the Settling Parties to come to agreement on the terms of the Stipulation of Settlement and all related documents by February 28, 2007, the Escrow Agent shall release and distribute the Escrowed Funds as follows:

First, to pay to the Escrow Agent all costs of notice and related expenses, taxes and tax preparation expenses, if any, out of the Escrowed Amount pursuant to Paragraph 8 of the MOU;

Second, (i) in the event that DHB has not separately paid or caused to be paid to David H. Brooks the sum of $4,500,000 pursuant to Paragraph B6(a) of Exhibit B to the MOU, upon receipt of joint written instructions from DHB and Mr. Brooks, to pay to Mr. Brooks $4,500,000 plus the interest earned thereon pursuant to the terms of this Escrow Agreement in accordance with Paragraph B6(a) of Exhibit B to the MOU, by wire transfer in immediately available funds to an account indicated by Mr. Brooks; or (ii) in the event that DHB has paid Mr. Brooks pursuant to Paragraph B6(a) of Exhibit B to the MOU, upon receipt of joint written instructions from DHB and Mr. Brooks (A) to

2

pay to DHB $4,500,000 by wire transfer in immediately available funds to an account indicated by DHB, and (B) to pay to Mr. Brooks the interest earned on such $4,500,000 pursuant to the terms of this Escrow Agreement by wire transfer in immediately available funds to an account indicated by Mr. Brooks;

Third, as directed within 90 days thereafter, pursuant to joint written instructions from DHB and David H. Brooks, to pay such amounts to Mr. Brooks and/or DHB, the aggregate amount of which shall not exceed $14,825,000, as indicated in such joint written instructions, by wire transfer in immediately available funds to the account or accounts listed in such instructions; provided, however, that if no joint written instructions are received within such 90 day period, to pay $14,825,000 pursuant to Paragraph Fifth below;

Fourth, to fund a reserve to be held by the Escrow Agent in an amount equal to the August 14 Payment and any interest earned thereon, pursuant to the terms of this Escrow Agreement, to be distributed in accordance with a certain Agreement of Insureds entered into among the Settling Defendants as of the date hereof; and

Fifth, to pay to DHB the remaining balance of the Escrowed Funds, including, without limitation, any interest earned thereon, pursuant to the terms of this Escrow Agreement, not otherwise distributed in accordance with this Paragraph 4(c).

If a controversy exists between the Settling Defendants, or any of them and the Lead Plaintiffs as to the correct disposition of the Escrowed Funds and either party gives written notice to the Escrow Agent of such controversy, the Escrow Agent shall continue to hold the Escrowed Funds until (i) the parties to such disagreement subsequently deliver to the Escrow Agent a joint written notice with respect to the disposition of the Escrowed Funds, or (ii) the Escrow Agent receives a certified copy of a final decree, order or decision of a court of competent jurisdiction constituting the final determination of any dispute between such disputing parties with respect to the Escrowed Funds to be distributed hereunder, which distribution shall be made in accordance with such notice or judicial determination.

Notwithstanding any provision of this Escrow Agreement to the contrary, if at any time the Escrow Agent shall receive written instructions signed by all of the Settling Parties with respect to delivery of all or part of the Escrowed Funds, the Escrow Agent shall deliver such portion of the Escrowed Funds in accordance with such written instructions.

5.    Investment of Escrowed Amount.   During the term of this Escrow Agreement, the Escrow Agent shall invest and reinvest the Escrowed Funds in United States Treasury Bills of ninety (90) days or less duration to maturity, until such time as the entire amount of the Escrowed Funds is released from escrow and paid out by the Escrow Agent in accordance with the terms of this Escrow Agreement. All payments of interest on such investments and other accretions thereto shall be added to and become part of the Escrowed Funds. The record owner of any securities or other investments in which the Escrowed Funds are from time to time invested or reinvested shall be the Escrow Agent or its nominee. In no event shall any part of the Escrowed Funds be commingled with any other funds held by the Escrow Agent or any of its parents, subsidiaries or affiliates. The Escrow Agent shall, promptly following the end of each

LIT 1581125v.3

calendar month, send the Settling Parties a reasonably detailed, written statement of holdings and transactions with respect to the Escrowed Funds.

For tax purposes, all income or earnings with respect to the Escrowed Funds shall be treated by the Escrow Agent as earnings from a "qualified settlement fund" within the meaning of Treas. Regs. §§ 1.468-B-1 through 1.468B-5 and the Escrow Agent shall make such elections and do all else necessary to have the Escrowed Funds thereafter treated as a "qualified settlement fund".

The Escrow Agent shall be authorized at all times and from time to time to liquidate any investment of the Escrowed Funds as may be necessary to provide available cash to make any release, disbursement or payment called for under the terms of this Agreement. The Escrow Agent shall have no responsibility or liability for any losses resulting from liquidation of the Escrowed Funds (such as liquidation prior to maturity).

6.    Termination of Agreement.  When all of the Escrowed Funds have been distributed pursuant to the provisions of this Escrow Agreement, this Escrow Agreement, except for the provisions of Paragraphs 7(b) and 7(f) hereof, shall terminate, and be of no further force or effect.

7.    Escrow Agent.

(a)    Duties and Responsibilities.  (i) The duties and responsibilities of the Escrow Agent hereunder shall be limited to those expressly set forth in this Escrow Agreement and in the MOU, and the Escrow Agent shall not be bound in any way by any other contract or agreement between the parties hereto, whether or not the Escrow Agent has knowledge of any such contract or agreement or of the terms or conditions thereof. In the event that the Escrow Agent shall be uncertain as to any duties or responsibilities hereunder or shall receive instructions from any of the parties hereto with respect to the Escrowed Funds which in the Escrow Agent's belief are in conflict with any of the provisions of this Escrow Agreement, the Escrow Agent shall be entitled to refrain from taking any action until it shall be directed to do so in writing by all parties hereto or by order of a court of competent jurisdiction in proceedings which the Escrow Agent or any other party hereto shall be entitled to commence. The Escrow Agent may act upon the advice of its counsel in taking or refraining from taking any action hereunder and may act upon any instrument or other writing believed in good faith to be genuine and to be signed and presented by the proper person or persons.

(ii)    The Escrow Agent shall not be responsible for the genuineness of any signature or document presented to it pursuant to this Escrow Agreement and may rely conclusively upon and shall be protected in acting upon any list, advice, judicial order or decree, certificate, notice, request, consent, statement, instruction or other instrument believed by it in good faith to be genuine or to be signed or presented by the proper person hereunder, or duly authorized by such person or properly made. The Escrow Agent shall not be responsible for any of the agreements contained herein except the performance of its duties as expressly set forth herein. The duties and obligations of the Escrow Agent hereunder shall be governed solely by the provisions of this Escrow Agreement and the Escrow Agent shall have no duties other than the duties expressly imposed herein and shall not be required to take any action other than in

4

accordance with the terms hereof. The Escrow Agent shall not be bound by any notice of, or demand with respect to, any waiver, modification, amendment, termination, cancellation, rescission or restatement of this Escrow Agreement , unless in writing and signed by all of the parties hereto, and, if the duties of the Escrow Agent are affected thereby, unless Escrow Agent shall have given its prior written consent thereto.

(b)    Liability.  The Escrow Agent shall not be liable to anyone for any damage, loss or expense incurred as a result of any act or omission of the Escrow Agent, unless such damage, loss or expense is caused by the Escrow Agent's willful default or gross negligence. Accordingly, and without limiting the foregoing, the Escrow Agent shall not incur any such liability with respect to (i) any action taken or omitted under this Agreement, or (ii) any action taken or omitted in reliance upon any instrument, including any written notice or instruction provided for herein, not only as to its due execution by an authorized person and as to the validity and effectiveness of such instrument, but also as to the truth and accuracy of any information contained therein.  Should any issue arise with respect to the delivery or ownership of the Escrowed Funds, the Escrow Agent shall have no liability to any party hereto for retaining dominion and control over the Escrowed Funds until such issue is resolved by (i) mutual agreement of the parties; or (ii) final order, decree or judgment by a court of competent jurisdiction.  In no event shall the Escrow Agent be under any duty whatsoever to institute or defend such proceeding.

(c)    Disputes.  In the event of a dispute between any of the parties hereto sufficient in the discretion of the Escrow Agent to justify its initiation of legal proceedings, or in the event that Escrow Agent is joined as a party to a lawsuit by virtue of the fact that it is holding the Escrowed Funds, the Escrow Agent may, at its option, either (i) tender the Escrowed Funds into the registry or custody of the court of competent jurisdiction before which such lawsuit is pending, and thereupon be discharged from all further duties and liabilities under this Escrow Agreement with respect to the Escrowed Funds so tendered or (ii) deliver the Escrowed Funds in accordance with the court's orders or ultimate disposition of such lawsuit.  Any legal action initiated by the Escrow Agent may be brought in any court as the Escrow Agent shall determine to have jurisdiction with respect to such matter.

(d)    Attachment.  In the event all or any part of the Escrowed Funds shall be attached, garnished or levied upon pursuant to any court order, or the delivery thereof shall be stayed or enjoined by a court order, or any other order, judgment or decree shall be made or entered by any court affecting the Escrowed Funds or any part hereof or any act of the Escrow Agent, the Escrow Agent is authorized to obey and comply with all writs, orders, judgments or decrees so entered or issued by any such court, without the necessity of inquiring whether such court has jurisdiction; and if the Escrow Agent obeys or complies with any such writ, order, or decree, the Escrow Agent shall not be liable to any of the parties hereto or any other person by reason of such compliance.

(e)    Legal Action.  The Escrow Agent shall have no duty to incur any out-of-pocket expenses or to take any legal action in connection with this Escrow Agreement or towards its enforcement, or to appear in, prosecute or defend any action or legal proceeding that would result in or might require it to incur any cost, expense, loss, or liability, unless and until it shall

5

receive confirmation and at its option, security, with respect to indemnification in accordance with Paragraph 7(f) of this Escrow Agreement.

(f)    Indemnification.  Without determining or limiting any rights as between The Settling Parties, which rights shall exist outside this Escrow Agreement and not be prejudiced hereby, the Lead Plaintiffs and DHB jointly and severally hereby agree to indemnify and hold harmless the Escrow Agent from and against any and all cost, loss, damage, disbursement, liability, and expense, including reasonable attorneys' fees and costs, which may be imposed upon or incurred by the Escrow Agent hereunder, or in connection with the performance of its duties hereunder, including any litigation arising out of this Escrow Agreement, or involving the subject matter hereof, except only costs, losses, claims, damages, disbursements, liabilities and expenses arising out of the Escrow Agent's acts or omissions for which the Escrow Agent is adjudged willfully malfeasant or grossly negligent by a final decree, order or judgment of a court of competent jurisdiction from which no appeal is taken within the applicable appeals period.

(g)    Law Firm Escrow Agent.  The Settling Parties each acknowledge and agree that nothing contained herein shall be deemed to prevent any law firm serving as the Escrow Agent, or as a successor escrow agent, from acting as counsel for any one or more of the Settling Parties, or any of their respective stockholders, or any of their respective affiliates, or any other party in any matter, including resolution of disputes and claims subject to, arising under or related to the MOU or this Escrow Agreement, or acting as an escrow agent on behalf of others.

(h)    Accounting.  The Escrow Agent will provide to each Settling Party a written accounting of the investments held in escrow hereunder and all transactions relating to this Escrow Agreement, including any distributions of the Escrowed Funds, within twenty (20) business days following written request of any such Party.

8.    Escrow Agent Compensation and Expenses.  The Escrow Agent shall not be entitled to compensation for its services hereunder as Escrow Agent.  The Escrow Agent shall be entitled to reimbursement out of the Escrowed Funds for its out of pocket costs and expenses related to its activities as Escrow Agent.  The Lead Plaintiffs and DHB shall jointly and severally be responsible for all amounts to which the Escrow Agent is entitled under the indemnification provisions contained herein.

9.    Miscellaneous.

(a)    Notices.  All notices, requests, consents and other communications hereunder shall be in writing, shall be addressed to the receiving party's address set forth below or to such other address as a party may designate by notice hereunder, and shall be either (i) delivered by hand, (ii) made by telex, telecopy or facsimile transmission, (iii) sent by overnight courier, or (iv) sent by registered or certified mail, return receipt requested, postage prepaid.

If to Settling Defendants or any of them:
c/o
All defense counsel as per the signature pages hereto

With a copy to Lead Plaintiffs and Viray c/o their counsel

6

LIT 1581125v.3

If to Lead Plaintiffs and/or Viray:
c/o Lerach Coughlin Stola Geller Rudman & Robbins LLP
Keith F. Park
655 W. Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

        and

Labaton Sucharow & Rudoff LLP
Lynda J. Grant
100 Park Avenue, 12th Floor
New York, NY 10017-5563
Tel: 212-907-0700
Fax: 202-818-0477

        and

c/o Law offices of Thomas G. Amon
500 Fifth Avenue, Suite 1650
New York, NY 10110
Tel: 212-820-2430
Fax: 202-810-2427

        and

Robbins Umeda & Fink, LLP
Brian J. Robbins
610 W. Ash Street, Suite 1800
San Diego, CA 92101
Tel: 619-525-3990
Fax: 619-525-3991

With a copy to all defense counsel

If to the
Escrow Agent:
c/o Lerach Coughlin Stola Geller Rudman & Robbins LLP
Keith F. Park
655 W. Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

7

With a copy to all defense counsel and counsel for Lead Plaintiffs and Viray

All notices, requests, consents and other communications hereunder shall be deemed to have been given either (i) if by hand, at the time of the delivery thereof to the receiving party at the address of such party set forth above, (ii) if made by telex, telecopy or facsimile transmission, at the time that receipt thereof has been acknowledged by electronic confirmation or otherwise, (iii) if sent by overnight courier, on the next business day following the day such notice is delivered to the courier service, or (iv) if sent by registered or certified mail, on the 5th business day following the day such mailing is made.

      (b)    <u>Entire Agreement</u>. This Escrow Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings between or among the parties relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Escrow Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Escrow Agreement.

      (c)    <u>Amendments, Waivers and Consents</u>. Except as otherwise expressly provided herein, the terms and provisions of this Escrow Agreement may be modified or amended only by written agreement executed by all parties hereto. The terms and provisions of this Escrow Agreement may be waived, or consent for the departure therefrom granted, only by a written document signed by the party entitled to the benefits of such terms or provisions. No such waiver or consent shall be deemed to be or shall constitute a waiver or consent with respect to any other terms or provisions of this Escrow Agreement, whether or not similar. Each such waiver or consent shall be effective only in the specific instance and for the purpose for which it was given, and shall not constitute a continuing waiver or consent.

      (d)    <u>Assignment</u>. The rights and obligations under this Escrow Agreement may not be assigned by any of the parties hereto without the prior written consent of the other parties.

      (e)    <u>Benefit, Binding Effect; Third Party Beneficiaries</u>. All statements, representations, warranties, covenants and agreements in this Escrow Agreement shall be binding on the parties hereto and shall inure to the benefit of the respective successors and permitted assigns of each party hereto. Nothing in this Escrow Agreement shall be construed to create any rights or obligations except among the parties hereto, and no person or entity shall be regarded as a third-party beneficiary of this Escrow Agreement.

      (f)    <u>Governing Law</u>. This Escrow Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the [State of New York], without giving effect to the conflict of law principles thereof.

      (g)    <u>Severability</u>. In the event that any court of competent jurisdiction shall determine that any provision, or any portion thereof, contained in this Escrow Agreement shall be unenforceable or invalid in any respect, then such provision shall be deemed limited to the extent that such court deems it valid or enforceable, and as so limited shall remain in full force and effect. In the event that such court shall deem any such provision, partially or wholly

8

unenforceable, the remaining provisions of this Escrow Agreement shall nevertheless remain in full force and effect.

(h)    Expenses.  Except for the expenses of the Escrow Agent which shall be paid as provided in Paragraph 8, each of the parties hereto shall pay its own fees and expenses (including the fees of any attorneys, accountants, appraisers or others engaged by such party) in connection with this Escrow Agreement and the transactions contemplated hereby, whether or not the transactions contemplated in this Escrow Agreement or in the MOU are consummated.

(i)    Headings and Captions.  The headings and captions contained in this Escrow Agreement are for convenience only and shall not affect the meaning or interpretation of this Escrow Agreement or of any of its terms or provisions.

(j)    Interpretation.  The parties hereto acknowledge and agree that they have participated jointly in the negotiation and drafting of this Escrow Agreement, have each been represented by counsel in such negotiation and drafting, and that in the event an ambiguity or question of intent or interpretation arises, this Escrow Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Escrow Agreement.

(k)    Counterparts.  This Escrow Agreement may be executed in any number of counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement under seal as of the day and year first above written.

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By:    _____
Keith F. Park
Escrow Agent and Co-Lead Counsel for Lead
    Plaintiffs

LABATON SUCHAROW & RUDOFF LLP

By:    _____
Lynda J. Grant
Co-Lead Counsel for Lead Plaintiffs

LAW OFFICES OF THOMAS AMON

By:    _____

9

LIT 1581125v.3

unenforceable, the remaining provisions of this Escrow Agreement shall nevertheless remain in full force and effect.

      (h)    Expenses. Except for the expenses of the Escrow Agent which shall be paid as provided in Paragraph 8, each of the parties hereto shall pay its own fees and expenses (including the fees of any attorneys, accountants, appraisers or others engaged by such party) in connection with this Escrow Agreement and the transactions contemplated hereby, whether or not the transactions contemplated in this Escrow Agreement or in the MOU are consummated.

      (i)    Headings and Captions. The headings and captions contained in this Escrow Agreement are for convenience only and shall not affect the meaning or interpretation of this Escrow Agreement or of any of its terms or provisions.

      (j)    Interpretation. The parties hereto acknowledge and agree that they have participated jointly in the negotiation and drafting of this Escrow Agreement, have each been represented by counsel in such negotiation and drafting, and that in the event an ambiguity or question of intent or interpretation arises, this Escrow Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Escrow Agreement.

      (k)    Counterparts. This Escrow Agreement may be executed in any number of counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

    IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement under seal as of the day and year first above written.

                                LERACH COUGHLIN STOLA GELLER
                                RUDMAN & ROBBINS LLP

By:     _____

        Keith F. Park
        Escrow Agent and Co-Lead Counsel for Lead
        Plaintiffs

        LABATON SUCHAROW & RUDOFF LLP

By     _____

        Lynda J. Grant
        Co-Lead Counsel for Lead Plaintiffs

        LAW OFFICES OF THOMAS AMON

By:     _____

LIT 1581125v.3

unenforceable, the remaining provisions of this Escrow Agreement shall nevertheless remain in full force and effect.

    (h)    <u>Expenses</u>.  Except for the expenses of the Escrow Agent which shall be paid as provided in Paragraph 8, each of the parties hereto shall pay its own fees and expenses (including the fees of any attorneys, accountants, appraisers or others engaged by such party) in connection with this Escrow Agreement and the transactions contemplated hereby, whether or not the transactions contemplated in this Escrow Agreement or in the MOU are consummated.

    (i)    <u>Headings and Captions</u>.  The headings and captions contained in this Escrow Agreement are for convenience only and shall not affect the meaning or interpretation of this Escrow Agreement or of any of its terms or provisions.

    (j)    <u>Interpretation</u>.  The parties hereto acknowledge and agree that they have participated jointly in the negotiation and drafting of this Escrow Agreement, have each been represented by counsel in such negotiation and drafting, and that in the event an ambiguity or question of intent or interpretation arises, this Escrow Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Escrow Agreement.

    (k)    <u>Counterparts</u>.  This Escrow Agreement may be executed in any number of counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

    IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement under seal as of the day and year first above written.

LERACH COUGHLIN STOLA GELLER
RUDMAN & ROBBINS LLP

By: _____
Keith F. Park
Escrow Agent and Co-Lead Counsel for Lead
    Plaintiffs

LABATON SUCHAROW & RUDOFF LLP

By: _____
Lynda J. Grant
Co-Lead Counsel for Lead Plaintiffs

LAW OFFICES OF THOMAS AMON

By: _____

LIT 1581125v.3

Thomas Amon
ROBBINS UMEDA & FINK, LLP

By: _____

Brian Robbins
Co-Lead Counsel in the Derivative Action

10

BAKER BOTTS LLP

By: _____

R. Stan Mortenson
Time Warner
1299 Pennsylvania Avenue N.W.
Washington, DC 20004
Tel: 202-639-7979
Fax: 202-585-1092

     and

Richard Harper
30 Rockefeller Plaza
New York, NY 10112
Tel: 212-408-2675
Fax: 212-259-2475

Counsel for Defendant DHB Industries, Inc.

MILBANK TWEED HADLEY & McCLOY LLP

By: _____

George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

MINTZ LEVIN COHN FERRIS CLOVSKY &
    POPEO, P.C.

By: _____

R. Robert Popeo
John F. Sylvia
One Financial Center
Boston, MA 02111
Tel:  617-542-6000
Fax: 617-542-2241

     and

Jerome Gotkin
666 Third Avenue, 25th Floor
New York, NY 10017
Tel: 212-935-3000

LIT 1581125v.3

11

BAKER BOTTS LLP

By: _____

R. Stan Mortenson
Time Warner
1299 Pennsylvania Avenue N.W.
Washington, DC 20004
Tel: 202-639-7979
Fax: 202-585-1092

    and

Richard Harper
30 Rockefeller Plaza
New York, NY 10112
Tel: 212-408-2675
Fax: 212-259-2475

Counsel for Defendant DHB Industries, Inc.

MILBANK TWEED HADLEY & McCLOY LLP

By: _____

George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

MINTZ LEVIN COHN FERRIS CLOVSKY &
    POPEO, P.C.

By: _____

R. Robert Popeo
John F. Sylvia
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241

    and

Jerome Gotkin
666 Third Avenue, 25th Floor
New York, NY 10017
Tel: 212-935-3000

11

BAKER BOTTS LLP

By:    _____

R. Stan Mortenson
Time Warner
1299 Pennsylvania Avenue N.W.
Washington, DC 20004
Tel: 202-639-7979
Fax: 202-585-1092

and

Richard Harper
30 Rockefeller Plaza
New York, NY 10112
Tel: 212-408-2675
Fax: 212-259-2475

Counsel for Defendant DHB Industries, Inc.

MILBANK TWEED HADLEY & McCLOY LLP

By:    _____

George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

MINTZ LEVIN COHN FERRIS GLOVSKY &
POPEO, P.C.

By:    _____     JEROME GOTKIN

R. Robert Popeo
John F. Sylvia
One Financial Center
Boston, MA 02111
Tel:  617-542-6000
Fax: 617-542-2241

and

Jerome Gotkin
666 Third Avenue, 25th Floor
New York, NY 10017
Tel: 212-935-3000

11

Fax: 212-983-3115

Counsel for Defendant David H. Brooks

MILBANK TWEED HADLEY & McCLOY LLP

By: _____
George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

Counsel for Defendants Terry Brooks, David
Brooks International Inc., Andrew Brooks
Industries Inc. and Elizabeth Brooks Industries Inc.

SERCARZ & RIOPELLE, LLP

By: _____
Roland G. Riopelle
Carnegie Hall Tower
152 W. 57th Street, Ste. 24C
New York, NY 10019
Tel: 212-586-4900
Fax: 212-586-1234

Counsel for Defendant Sandra Hatfield

KOBRE & KIM LLP

By: _____
Steven G. Kobre
800 Third Avenue
New York, NY 10022
Tel: 212-488-1200
Fax: 212-488-1220

Counsel for Defendant Dawn Schlegel

12

Fax: 212-983-3115

Counsel for Defendant David H. Brooks

MILBANK TWEED HADLEY & McCLOY LLP

By: _____

George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

Counsel for Defendants Terry Brooks, David
Brooks International Inc., Andrew Brooks
Industries Inc. and Elizabeth Brooks Industries Inc.

SERCARZ & RIOPELLE, LLP

By: _____

Roland G. Riopelle
Carnegie Hall Tower
152 W. 57th Street, Ste. 24C
New York, NY 10019
Tel: 212-586-4900
Fax: 212-586-1234

Counsel for Defendant Sandra Hatfield

KOBRE & KIM LLP

By: _____

Steven G. Kobre
800 Third Avenue
New York, NY 10022
Tel: 212-488-1200
Fax: 212-488-1220

Counsel for Defendant Dawn Schlegel

12

Fax: 212-983-3115

Counsel for Defendant David H. Brooks


MILBANK TWEED HADLEY & McCLOY LLP

By: _____

George S. Canellos
1 Chase Manhattan Plaza
New York, NY 10005
Tel: 212-530-5000
Fax: 212-530-5219

Counsel for Defendants Terry Brooks, David
Brooks International Inc., Andrew Brooks
Industries Inc. and Elizabeth Brooks Industries Inc.


SERCARZ & RIOPELLE, LLP

By: _____

Roland G. Riopelle
Carnegie Hall Tower
152 W. 57th Street, Ste. 24C
New York, NY 10019
Tel: 212-586-4900
Fax: 212-586-1234


Counsel for Defendant Sandra Hatfield

KOBRE & KIM LLP

By: _____ (EAC)

Steven G. Kobre
800 Third Avenue
New York, NY 10022
Tel: 212-488-1200
Fax: 212-488-1220


Counsel for Defendant Dawn Schlegel

12

LIT 1581125v.3

CLIFFORD CHANCE US LLP

By: _Mark Holland_

Mark Holland
31 W. 52nd Street
New York, NY 10019
Tel: 212-878-8000
Fax: 212-878-8375

Counsel for Defendants Cary Chasin, Jerome
Krantz, Gary Nadelman, and Barry Berkman

DLA PIPER RUDNICK GRAY CARY US LLP

By: _____

Earl Silbert
1200 Nineteenth Street, NW
Washington, DC 2003-2430
Tel: 202-861-3900
Fax: 202-223-2085

Counsel for Defendant Gen. (Ret.) Larry R. Ellis

DAY, BERRY & HOWARD LLP

By: _____

Robert Knuts
875 Third Avenue
New York, NY 10022
Tel: 212-829-3620
Fax: 212-829-3601

Counsel for Defendants Tactical Armor Products,
Inc. and Jeffrey Brooks

13

CLIFFORD CHANCE US LLP

By: _____

Mark Holland
31 W. 52nd Street
New York, NY 10019
Tel: 212-878-8000
Fax: 212-878-8375

Counsel for Defendants Cary Chasin, Jerome
Krantz, Gary Nadelman, and Barry Berkman

DLA PIPER RUDNICK GRAY CARY US LLP

By: _____

Earl Silbert
1200 Nineteenth Street, NW
Washington, DC 2003-2430
Tel: 202-861-3900
Fax: 202-223-2085

Counsel for Defendant Larry Ellis

DAY, BERRY & HOWARD LLP

By: _____

Robert Knuts
875 Third Avenue
New York, NY 10022
Tel: 212-829-3620
Fax: 212-829-3601

Counsel for Defendants Tactical Armor Products,
Inc. and Jeffrey Brooks

13

LIT 1581125v.3

CLIFFORD CHANCE US LLP

By: _____

Mark Holland
31 W. 52nd Street
New York, NY 10019
Tel: 212-878-8000
Fax: 212-878-8375

Counsel for Defendants Cary Chasin, Jerome
Krantz, Gary Nadelman, and Barry Berkman


DLA PIPER RUDNICK GRAY CARY US LLP

By: _____

Earl Silbert
1200 Nineteenth Street, NW
Washington, DC 2003-2430
Tel: 202-861-3900
Fax: 202-223-2085


Counsel for Defendant Gen. (Ret.) Larry R. Ellis


DAY, BERRY & HOWARD LLP

By: _____

Robert Knuts
875 Third Avenue
New York, NY 10022
Tel: 212-829-3620
Fax: 212-829-3601

Counsel for Defendants Tactical Armor Products,
Inc. and Jeffrey Brooks

13

LIT 1581125v.3

**EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| In re DHB INDUSTRIES, INC. CLASS ACTION LITIGATION | x : : : | Civil Action No. 2:05-cv-04296-JS-ETB  CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | : : : : : x | [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT OF CLASS ACTION AND PROVIDING FOR NOTICE |

EXHIBIT B

WHEREAS, the parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order approving the settlement (the "Settlement") of a certain Class Action (the "Class Action"), in accordance with a Stipulation and Agreement of Settlement dated as of November 30, 2006 (the "Stipulation"), which, together with the Exhibits annexed thereto sets forth the terms and conditions for a Settlement and dismissal of the Class Action and a certain related Derivative Action (collectively the "Actions") upon the terms and conditions set forth therein; and

WHEREAS, all capitalized terms contained herein shall have the same meanings as set forth in the Stipulation (in addition to those capitalized terms defined herein); and

WHEREAS, the Court having read and considered the Stipulation and the Exhibits annexed thereto:

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    The Court does hereby preliminarily approve, subject to further consideration at the Settlement Hearing described below, the Stipulation and the Settlement set forth therein, including the terms and conditions for settlement and dismissal with prejudice of the Class Action.

2.    For purposes of settlement only, the Court hereby certifies a Class defined as all Persons who purchased or otherwise acquired (including by exchange, conversion or otherwise) the publicly traded securities of DHB (including puts, calls and other securities) on or after November 18, 2003 until and including November 30, 2006, and were allegedly damaged thereby.  Excluded from the Class are the Class Defendants and the Derivative Defendants and Persons related to Defendants, including any subsidiaries or affiliates of DHB; the officers and directors of DHB during the Class Period; members of the individual Defendants' immediate families; any person, firm, trust, officer, director or any individual or entity in which any Defendant has a controlling interest or which is related to, or affiliated with, any of the Defendants, and the legal representatives,

agents, affiliates, heirs, successors in interest or assigns of any such excluded person or entity. Also excluded from the Class are those Persons who timely and validly request to be excluded from the Class pursuant to the "Notice of Pendency and Settlement of Class Action" to be sent to Class Members. The Court hereby appoints the Lead Plaintiffs as representatives of the Class.

3.     With respect to the Class, again for purposes of settlement only, this Court finds that: (a) the Members of the Class are so numerous that joinder of all Class Members in the Class Action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual question; (c) the claims of the Class Plaintiffs are typical of the claims of the Class; (d) the Class Plaintiffs and their counsel have fairly and adequately represented and protected the interests of the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Members of the Class in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by Members of the Class, (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the Class Action.

4.     A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2007, at __:__ __.m., at the Alfonse M. D'Amato Federal Building, United States District Court, 100 Federal Plaza, Central Islip, New York 11722-4438, to determine whether the Settlement of the Class Action and the Derivative Action on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate and should be approved by the Court; whether a Judgment as provided in §1, ¶1.18 of the Stipulation should be entered herein; whether the proposed Plan of Allocation should be approved; and to determine the amount of fees and expenses that should be awarded to Class Plaintiffs' Counsel and the amount, if any, to be awarded to the Class

- 2 -

Plaintiffs in the Class Action to reimburse them for their costs and expenses. The Court may adjourn the Settlement Hearing or modify any of the dates herein without further notice to Members of the Class.

5.    The Court approves, as to form and content, the Notice of Pendency and Settlement of Class Action (the "Class Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice for Publication of Settlement of Class Action (the "Summary Class Notice") annexed as Exhibits B-1, B-2 and B-3 hereto, respectively, and finds that the mailing and distribution of the Class Notice and publishing of the Summary Class Notice, substantially in the manner and form set forth in this Order, meets the requirements of Federal Rule of Civil Procedure 23, 15 U.S.C. §78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

6.    Gilardi & Co. LLC ("Claims Administrator") is hereby appointed to supervise and administer the notice procedure and the processing of claims as more fully set forth below:

(a)    Not later than _____, 2006 ("Notice Date"), Class Plaintiffs' Counsel shall cause a copy of the Class Notice and the Proof of Claim, substantially in the forms annexed as Exhibits B-1 and B-2 hereto, to be mailed by first class mail to all Class Members who can be identified with reasonable effort;

(b)    Not later than _____, 2006, Class Plaintiffs' Counsel shall cause the Summary Class Notice, substantially in the form annexed as Exhibit B-3 hereto, to be published once in *Investor's Business Daily*; and

(c)    At least seven (7) business days prior to the Settlement Hearing, Class Plaintiffs' Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

7.      Nominees who held or hold DHB publicly traded securities for the beneficial ownership of Persons who purchased or otherwise acquired DHB publicly traded securities during the period November 18, 2003 through November 30, 2006, inclusive, shall send the Class Notice and the Proof of Claim to such beneficial owners of such DHB securities within ten (10) days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Claims Administrator within ten (10) days of receipt thereof in which event the Claims Administrator shall promptly mail the Class Notice and Proof of Claim to such beneficial owners.

8.      Class Plaintiffs and all other Members of the Class shall be bound by all orders, determinations and the Judgment in the Class Action concerning the Settlement, whether favorable or unfavorable to the Members of the Class or any of them.

9.      Any Person falling within the definition of the Class may, upon request, be excluded from the Settlement.  Any such Person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion"), postmarked no later than _____, 2007.  A Request for Exclusion must state:  (1) the name, address, and telephone number of the Person requesting exclusion; (2) the number of shares of DHB publicly traded securities purchased during the Class Period; and (3) that the Person wishes to be excluded from the Class.  All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall have no rights under the Stipulation, shall not share in the distribution of the Settlement Fund, and shall not be bound by the Stipulation or the Judgment.

10.     Class Members who wish to participate in the Settlement shall complete and submit Proof of Claim forms in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Proof of Claim forms must be postmarked no later than ninety (90) days from the Notice Date.  Any Class Member who does not timely submit a Proof of Claim within the time

provided for, shall be barred from sharing in the distribution of the proceeds of the Settlement Fund, unless otherwise ordered by the Court, but shall nevertheless be bound by the terms and conditions of the Settlement. Notwithstanding the foregoing Class Plaintiffs' Counsel shall have the discretion to accept late submitted claims for processing so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

11.     Any Member of the Class may enter an appearance in the Class Action, at his, her or its own expense, individually or through counsel of his, her or its own choice. If he, she or it does not enter an appearance, he, she or it will be represented by Class Plaintiffs' Counsel.

12.     Pending final determination of whether the Settlement should be approved, no Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute against any of the Released Class Persons, any action or proceeding in any court or tribunal asserting any of the Released Class Claims.

13.     Any Member of the Class may appear and show cause, if he, she or it has any, why the Settlement of the Class Action should not be approved as fair, reasonable and adequate, or why a Judgment should not be entered thereon, why the Plan of Allocation should not be approved, or why attorneys' fees and expenses should not be awarded to Class Plaintiffs' Counsel as requested or why the Class Plaintiffs should not be reimbursed for their costs and expenses as requested; provided, however, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Judgment to be entered thereon approving the same, or the order approving the Plan of Allocation, or the attorneys' fees and expenses to be awarded to Class Plaintiffs' Counsel, or any award reimbursing the Class Plaintiffs for their costs and expenses, unless that Person, on or before _____, 2007, has filed with the Court and served on the

following counsel (delivered by hand or sent by first class mail) written objections and copies of any

papers and briefs in support thereof:

> Samuel H. Rudman
> LERACH COUGHLIN STOIA GELLER
>   RUDMAN & ROBBINS LLP
> 58 South Service Road, Suite 200
> Melville, NY  11747
>
> William S. Lerach
> Keith F. Park
> Thomas G. Wilhelm
> LERACH COUGHLIN STOIA GELLER
>   RUDMAN & ROBBINS LLP
> 655 West Broadway, Suite 1900
> San Diego, CA  92101
>
> Lynda J. Grant
> Nicole M. Zeiss
> LABATON SUCHAROW & RUDOFF LLP
> 100 Park Avenue, 12th Floor
> New York, NY  10017-5563
>
> Co-Lead Counsel for Class Plaintiffs
>
> Eric Rieder
> David P. Kasakove
> BRYAN CAVE LLP
> 1290 Avenue of the Americas
> New York, NY  10104
>
> Counsel for Defendant DHB Industries, Inc.
>
> George S. Canellos
> C. Neil Gray
> Daniel M. Perry
> Robert C. Hora
> MILBANK TWEED HADLEY
>   & McCLOY LLP
> 1 Chase Manhattan Plaza
> New York, NY  10005-1413

R. Robert Popeo
John F. Sylvia
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111

Jerome Gotkin
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, NY  10017-4011

Counsel for Defendant David H. Brooks

George S. Canellos
C. Neil Gray
Daniel M. Perry
Robert C. Hora
MILBANK TWEED HADLEY
  & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY  10005-1413

Counsel for Defendants David Brooks International Inc., Andrew Brooks
Industries Inc., sued as Andrew Brooks International Inc., Elizabeth Brooks
Industries Inc., sued as Elizabeth Brooks International Inc.

ROLAND G. RIOPELLE
SERCARZ & RIOPELLE, LLP
Carnegie Hall Tower
152 W. 57th Street, Suite 24C
New York, NY  10019

Counsel for Defendant Sandra Hatfield

Steven G. Kobre
KOBRE & KIM LLP
800 Third Avenue
New York, NY  10022

Counsel for Defendant Dawn Schlegel

Mark Holland
Robert G. Houck
Mary K. Dulka
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY  10019

Counsel for Defendants Cary Chasin, Jerome Krantz, Gary Nadelman, and Barry Berkman

Earl Silbert
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, DC  20036-2430

Counsel for Defendant Larry R. Ellis

Marc Lee Mukasey
BRACEWELL & GIULIANI LLP
1177 Avenue of the Americas
New York, NY  10036

Counsel for Defendants Tactical Armor Products, Inc. and Terry Brooks

Benjamin Brafman
Brian E. Klein
BRAFMAN & ASSOCIATES, P.C.
767 Third Avenue
New York, NY  10017

Counsel for Defendant Jeffrey Brooks

(a)     The written objections and copies of any papers and briefs in support thereof

to be filed with the Court shall be delivered by hand or sent by first class mail to:

- 8 -

Clerk of the Court
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Alfonse M. D'Amato Federal Building
United States District Court
100 Federal Plaza
Central Islip, NY  11722-4438

(b)     Any Member of the Class who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the Settlement as incorporated in the Stipulation, to the Plan of Allocation, or to the award of attorneys' fees and expenses to Class Plaintiffs' Counsel or reimbursement of the costs and expenses of the Class Plaintiffs, unless otherwise ordered by the Court, but shall otherwise be bound by the judgment to be entered and the releases to be given.

14.     All papers in support of the Settlement, the Plan of Allocation, any application by Class Plaintiffs' Counsel for attorneys' fees and expenses and reimbursement of the Class or Lead Plaintiffs' costs and expenses shall be filed with the Court and served by overnight mail or hand delivery no later than seven (7) days prior to the Settlement Hearing.

15.     No Person who is not a Class Member, Class Plaintiffs' Counsel, or Class Plaintiff shall have any right to any portion of, or to any distribution of, the Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

16.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court.

17.     Neither Class Defendants nor Class Defendants' Counsel shall have any responsibility for the Plan of Allocation or any application for attorneys' fees and expenses submitted by Class Plaintiffs' Counsel or reimbursement of the Class Plaintiffs' costs and expenses

- 9 -

submitted by Class Plaintiffs' Counsel and all such matters will be considered separately from the fairness, reasonableness and adequacy of the Settlement.

18.     At or after the Settlement Hearing, the Court shall determine whether the Plan of Allocation proposed by Class Plaintiffs' Counsel, and any application for attorneys' fees and expenses or reimbursement of the Class Plaintiffs' costs and expenses shall be approved.

19.     All reasonable expenses incurred in identifying and notifying Class Members, as well as in administering the Settlement Fund, shall be paid as set forth in the Stipulation. In the event the Effective Date does not occur, there is no obligation to repay any amounts actually and properly disbursed from or chargeable to the Notice and Administration Fund.

20.     Neither the Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendants, or any of them, of the truth of any of the allegations in the Class Action, or of any liability, fault, or wrongdoing of any kind.

21.     The Court reserves the right to adjourn the date of the Settlement Hearing or modify any of the dates set forth herein without further notice to the Members of the Class, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Members of the Class.

IT IS SO ORDERED.


DATED: _____     _____
                                   THE HONORABLE JOANNA SEYBERT
                                   UNITED STATES DISTRICT JUDGE

S:\Settlement\DHB Industries 05.set\3-7-07 CLN EB ORDER 00033738.doc

**EXHIBIT B-1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---
—————————————————————— x

In re DHB INDUSTRIES, INC. CLASS    :    Civil Action No. 2:05-cv-04296-JS-ETB
ACTION LITIGATION                   :
                                    :    CLASS ACTION
——————————————————————              :
                                    :
This Document Relates To:           :    NOTICE OF PENDENCY AND
                                    :    SETTLEMENT OF CLASS ACTION
        ALL ACTIONS.                :
                                    :
—————————————————————— x

EXHIBIT B-1

TO:    ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED (INCLUDING BY EXCHANGE, CONVERSION OR OTHERWISE) DHB INDUSTRIES, INC. ("DHB") PUBLICLY TRADED SECURITIES (INCLUDING PUTS, CALLS AND OTHER SECURITIES) ON OR AFTER NOVEMBER 18, 2003 UNTIL AND INCLUDING NOVEMBER 30, 2006 (THE "CLASS" AS MORE PARTICULARLY DEFINED BELOW:

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION. PLEASE NOTE THAT IF YOU ARE A MEMBER OF THE CLASS YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT FUND DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THIS FUND, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE POSTMARKED ON OR BEFORE _____, 2007.

This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of New York (the "Court"). The purpose of this Notice is to inform you of the settlement ("Settlement") of a class action (the "Class Action") pursuant to an agreement (the "Stipulation") to resolve the claims in the Class Action and a related derivative action (the "Derivative Action") (collectively, the "Actions"), and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement. This Notice describes the rights you may have in connection with the Settlement and what steps you may take in relation to the Settlement and the Class Action.

The Settlement creates a fund in the principal amount of $34,900,000 in cash and 3,184,713 shares of DHB common stock (the "Settlement Fund"), the cash portion of which is earning interest. The Settlement also provides for the adoption by DHB of certain corporate governance measures and the resignation of certain senior DHB management personnel and certain members of DHB's Board of Directors. Based on an estimate of the number of shares entitled to participate in the Settlement and the anticipated number of claims to be submitted by Class Members and the current price of

DHB common stock, the average distribution from the Settlement Fund (with the stock portion converted to a dollar amount based on its current trading price) will be approximately $0.46 per share before deduction of Court-approved fees and expenses. However, your actual recovery from the Settlement Fund will depend on a number of variables, including the number of claimants, the number of shares you purchased during the Class Period, the expense of administering the claims process, and the timing of your purchases and sales, if any.

The parties to the Class Action do not agree on the average amount of damages per share that would have been recoverable if the Class Plaintiffs had prevailed on the claims asserted in the Class Action, or even whether the Class Plaintiffs would have prevailed on any of those claims. The issues on which the parties disagree include: (1) the appropriate economic model for determining the amount by which the trading price of DHB securities was allegedly artificially inflated (if at all) at any time during the Class Period; (2) the effect of various market forces influencing the trading price of DHB securities at various times during the Class Period; (3) the extent to which external factors, such as general market conditions, influenced the trading price of DHB securities at various times during the Class Period; (4) the extent to which the various matters that the Class Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of DHB securities at various times during the Class Period; (5) the extent to which the various allegedly adverse material facts that the Class Plaintiffs alleged were omitted influenced (if at all) the trading price of DHB securities at various times during the Class Period; and (6) whether any of the statements made or facts allegedly omitted were false, material or otherwise actionable under the federal securities laws.

Counsel for the Class Plaintiffs believe that the Settlement is a substantial recovery and is in the best interests of the Class. Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that the Class Plaintiffs would not have prevailed on any of

their claims, in which case the Class would have received nothing.  In addition, the amount of damages recoverable by the Class, if any, was and continues to be vigorously challenged by the Defendants.  If the cases were tried, recoverable damages, if any, would have been limited to losses caused by conduct actionable under the securities laws and, had the Class Action gone to trial, Defendants intended to assert that all or most of the alleged losses of the Class Members were caused by non-actionable market, industry or general economic factors.

Class Plaintiffs' Counsel have not received any payment for their services in conducting the Class Action on behalf of the Members of the Class, nor have they been reimbursed for their out-of-pocket expenditures.  If the Settlement is approved by the Court, Class Plaintiffs' Counsel will apply to the Court (1) for attorneys' fees not to exceed 25% of the settlement proceeds (in both cash and DHB stock), and reimbursement of expenses incurred not to exceed $350,000.00, and (2) up to $25,000.00 for each Class Plaintiff to reimburse them for their costs and expenses, all to be paid from the Settlement Fund.  If the amounts requested by Class Plaintiff's Counsel are approved by the Court, the average cost would be approximately $0.12 per share.  The average cost per share would also vary depending on the number of shares for which valid claims are submitted.

This Notice is not an expression of any opinion by the Court about the merits of any of the claims or defenses asserted by any party in the Class Action or the fairness or adequacy of the Settlement.

For further information regarding this Settlement you may contact a representative of Class Plaintiffs' Counsel: Rick Nelson, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, Telephone: 800/449-4900.  Please do not contact the Court or DHB.

## I.    NOTICE OF HEARING ON PROPOSED SETTLEMENT

A settlement hearing (the "Settlement Hearing") will be held on _____, 2007, at _____ __.m., before the Honorable Joanna Seybert, United States District Judge, at the Alfonse M. D'Amato Federal Building, United States District Court, 100 Federal Plaza, Central Islip, New York 11722-4438.    The purpose of the Settlement Hearing will be to determine: (1) whether the Settlement consisting of $34,900,000 in cash (plus accrued interest) and 3,184,713 shares of DHB common stock should be approved as fair, reasonable and adequate to Members of the Class (as defined below); (2) whether the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair, reasonable, and adequate; (3) whether the application by Class Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses and the Class Plaintiffs' request for reimbursement of their time and expenses should be approved; and (4) whether the Class Action should be dismissed with prejudice and the Defendants released from all Released Class Claims against them.    The Court may adjourn or continue the Settlement Hearing or modify any dates set forth herein without further notice to the Class.

## II.    DEFINITIONS

1.    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

2.    "Claims" means any and all claims, demands, rights, liabilities, damages and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, including, without limitation, "Unknown Claims" (as defined below) and claims for negligence, gross negligence, breach of fiduciary duty, breach of duty of care, breach of duty of loyalty, waste, insider trading, unjust enrichment, abuse of control, mismanagement, fraud, and violations of any local, state or federal statutes, rules, regulations or common law.

- 4 -

3.    "Class" means all Persons who purchased or otherwise acquired (including by exchange, conversion or otherwise) the publicly traded securities of DHB (including puts, calls and other securities) on or after November 18, 2003 until and including November 30, 2006, and were allegedly damaged thereby.  Excluded from the Class are the Defendants and Persons related to the Defendants, including any subsidiaries or affiliates of DHB; the officers and directors of DHB during the Class Period; members of the individual Defendants' immediate families; any person, firm, trust, officer, director or any individual or entity in which any Defendant has a controlling interest or which is related to, or affiliated with, any of the Defendants; and the legal representatives, agents, affiliates, heirs, successors in interest or assigns of any such excluded person or entity.  Also excluded from the Class are those Persons who timely and validly request to be excluded from the Class pursuant to this Notice.

4.    "Class Defendants" means DHB, David H. Brooks, Terry Brooks, David Brooks International Inc., Andrew Brooks Industries Inc. (sued as Andrew Brooks International Inc.), Elizabeth Brooks Industries Inc. (sued as Elizabeth Brooks International Inc.), Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman and Barry Berkman.

5.    "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶3 above.

6.    "Class Period" means the period commencing on November 18, 2003 through and including November 30, 2006.

7.    "Class Plaintiffs' Counsel" means Keith F. Park, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 655 W. Broadway, Suite 1900, San Diego, CA 92101, Samuel H. Rudman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200,

Melville, NY 11747, and Lynda J. Grant, Labaton Sucharow & Rudoff LLP, 100 Park Avenue, 12th Floor, New York, NY 10017.

8.     "Current DHB Shareholders" means any Person(s) who owned DHB common stock as of November 30, 2006.

9.     "Defendants" means the Class Defendants and the Derivative Defendants.

10.     "Derivative Defendants" means nominal defendant DHB, David H. Brooks, Sandra Hatfield, Dawn M. Schlegel, Jerome Krantz, Gary Nadelman, Cary Chasin, Barry Berkman, Larry Ellis, Tactical Armor Products, Inc., David Brooks International Inc., Andrew Brooks Industries Inc. (sued as Andrew Brooks International Inc.), Elizabeth Brooks Industries Inc. (sued as Elizabeth Brooks International Inc.), Terry Brooks and Jeffrey Brooks.

11.     "Derivative Plaintiff" means Alvin Viray.

12.     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation shall have been met and have occurred, unless one or more of such conditions is waived or modified in writing and signed by Class Plaintiffs' Counsel, Derivative Counsel, and counsel for each of the Defendants.

13.     "Judgments" means the final judgments to be rendered by the Court in the Actions, substantially in the forms attached as Exhibits D and E to the Stipulation.

14.     "Non-Released Claims" means all of DHB's obligations to David H. Brooks and to all of the other Defendants to whom DHB has indemnification obligations, of and for indemnification and reimbursement for fees, expenses and liabilities, as provided for in DHB's Articles of Incorporation and By-Laws, in the laws of Delaware, and in this Stipulation, as the latter is approved by the Court, all of which shall remain in full force and effect, and David H. Brooks' undertaking to DHB, regarding his indemnification by DHB, and the undertakings of the other

Defendants to whom DHB has indemnification obligations, shall also remain in full force and effect. "Non-Released Claims" shall also include any and all obligations of any Defendant to any other Defendant under any existing contract or agreement between or among them, including, without limitation, any agreement entered into in connection with the Settlement.

15.    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, and assignees.

16.    "Related Persons" means each of a Defendant's present and former parents, subsidiaries, affiliates, divisions, joint ventures, joint venturers, and his, her or its present and former officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, advisors, investment advisors, auditors, accountants, spouses and immediate family members, and the predecessors, heirs, successors and assigns of any of them, and any Person in which any Related Person has or had a controlling interest or which is or was related to or affiliated with any Related Person, and any trust of which any Defendant is the settler or which is for the benefit of any Defendant and/or a member(s) of a Defendant's family. Stockbrokers in their capacity as such are excluded from this definition.

17.    "Released Class Claims" means any and all Claims arising from either the purchase or other acquisition (including by an exchange, conversion or otherwise) of any publicly-traded securities of DHB, including, without limitation, put and call options thereon, during the Class Period and based on any facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act that were or could have been asserted by the Lead Plaintiffs or any Class

- 7 -

Member in the Class Action, in a direct, indirect, representative, derivative or other capacity against the Released Class Persons, or any of them.

18.     "Released Class Persons" means the Class Defendants and each of them, and each of their respective Related Persons in their capacities as such.

19.     "Released Derivative Claims" means any and all Claims based on any facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act that were or could have been asserted by the Derivative Plaintiff on behalf of DHB, or by DHB on its own behalf, or by any Current DHB Shareholder in the Derivative Action, in a direct, indirect, representative, derivative or other capacity against the Released Derivative Persons, or any of them. In addition, Released Derivative Claims includes, without limitation, a release by DHB of David H. Brooks and Dawn M. Schlegel, and each of them, from any and all liability under §304 of the Sarbanes-Oxley Act of 2002 to reimburse DHB for any bonus or other incentive-based or equity based compensation received by them or either of them, or for any profits realized by them or either of them from the sale of any securities of DHB.

20.     "Released Derivative Persons" means the Derivative Defendants, and each of them, and each of their respective Related Persons in their capacities as such.

21.     "Released Persons" means, collectively, the Released Class Persons and the Released Derivative Persons.

22.     "Settlement Fund" means the principal amount of Thirty-Five Million Two Hundred Thousand Dollars ($35,200,000) plus 3,184,713 shares of DHB common stock.

23.     "Settling Parties" means, collectively, each of the Defendants, and the Class Plaintiffs and the Derivative Plaintiff on behalf of, respectively, themselves, the Members of the Class, the Current DHB Shareholders and derivatively on behalf of DHB.